P & E SHIPPING CORPORATION, Respondent and Claimant, Appellant,

v.

BANCO PARA EL COMERCIO EXTERIOR DE CUBA, Libelant, Appellee.

No. 5846.

United States Court of Appeals First Circuit.

Heard Feb. 5, 1962.

Decided Sept. 5, 1962.

John G. Poles, New York City, with whom Poles, Tublin & Patestides, New York City, was on brief, for appellant.

Antonio M. Bird, San Juan, P. R., with whom Hartzell, Fernandez & Novas, San Juan, P. R., was on brief, for appellee.

Before WOODBURY, Chief Judge, and ALDRICH and GANEY,* Circuit Judges.

GANEY, Circuit Judge.

This is an appeal from a decree in admiralty entered in the United States District Court for the District of Puerto Rico, awarding appellee $545,619.41 damages for loss resulting from appellant's failure to deliver a certain cargo of beans and potatoes at a port designated on four bills of lading issued by appellant.

On or about September 30, 1960, L. N. White & Company, Inc., an American importer and exporter of food products, delivered 40,000 bags of beans to the S.S. Ruth Ann, at Port Huron, Michigan, to be shipped to a foreign port. The freight charges of $57,628.01 were prepaid on board and the company received two bills of lading dated September 22, 1960, at New York from agents of appellant.

On October 18, 1960, F. W. Pirie Company, Ltd., a Canadian wholesale produce dealer, delivered 56,861 bags of potatoes to the Ruth Ann while she was docked at Saint John, New Brunswick, Canada, also to be shipped to a foreign port. The freight charges of $51,174.00 were prepaid and the Company received two bills of lading from appellant's agent.

In each case the consignee of the shipment was the appellee, Banco Para El Comercio Exterior de Cuba, Departmento de Importation; Section de Alimentos, which prepaid the shipping costs, and the port of destination was Havana, Cuba. The bills of lading made applicable the provisions of the Carriage of Goods by Sea Act, 46 U.S.C.A. §§ 1300–1315, to the contract of shipment. The ap-

* By special designation.

pellant, a corporation, organized and existing under the laws of the Republic of Liberia, is the owner of the Ruth Ann which sails under the Liberian flag.[1]

At 12:00 Noon on October 19, 1960, while the Ruth Ann was still at Saint John, the United States government proclaimed a general embargo effective 12:01 a. m., October 20, 1960, on the export to Cuba of merchandise except food and medicine. Almost at midnight on the same day, the Ruth Ann sailed from Saint John en route to New York. When the vessel arrived in New York on October 22, both the managing director and the shipping broker of appellant came aboard the Ruth Ann and conferred with the master of the vessel. On the same day the vessel left New York. While the vessel was en route to Bermuda, appellant's agent, Interamerican Marine Operators, Inc., sent a cablegram, dated October 24, to L. N. White & Company, Inc., 24 Stone Street, New York, advising it that if a bond in the amount of $750,000 was not posted in New York within 48 hours of notice of the cablegram as security for the safe return of the vessel and her crew and to cover additional possible expense upon completion of the discharge of the cargo at Havana, Cuba, the vessel would discharge the cargo at a United States port. On October 25, the Ruth Ann sailed from Bermuda en route to San Juan, Puerto Rico. Appellee refused to post bond in the amount requested, and by letter dated October 28, addressed to appellant and its agent, insisted that the cargo be unloaded at Havana. After the vessel arrived at San Juan on October 30, appellant discharged part of the cargo of potatoes but took no steps to unload the remainder. While the vessel was still in port, appellee, on November 10, 1960, brought a libel in rem against the vessel and also a libel in personam against appellant in the United States District Court for the District of Puerto Rico.

After hearing evidence, the District Court concluded that appellant was obligated to deliver the cargo of beans and potatoes at Havana, and awarded appellee the cost of the shipment, freight and other expenses incurred by it through appellant's failure to deliver the beans and potatoes. The final decree was signed on May 16, 1961.

Although the question was not raised here by the appellant, our problem at the outset is to ascertain whether the appellee should have been permitted to sue in a court of the United States. It is true that the admiralty courts of this country may afford redress for a breach of contract of shipping goods by sea, even though the vessel is a foreign one, and the goods were to be delivered to a foreign port. The Maggie Hammond, 9 Wall. 435, 76 U.S. 35, 19 L.Ed. 772 (1869); The Jerusalem, Fed.Cas.No. 7,293. A foreign state brings an action in our country not as a matter of right but only as a matter of comity. The Schooner Exchange, 11 U.S. (7 Cranch) 116, 136, 3 L.Ed. 287 (1812). However, the courts of the United States are not open to a foreign power which has not been recognized as a sovereign state by the government of the United States. Ex parte Muir, 254 U.S. 522, 532–33, 41 S.Ct. 185, 65 L.Ed. 383 (1921). And a foreign state may maintain a suit in our courts "only by that government which has been recognized by the political department of our government as the authorized government of the foreign state." Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 137, 58 S.Ct. 785, 791, 82 L.Ed. 1224 (1938).

From all that appears on the record before us, the appellee is a banking firm existing under the laws of the Republic of Cuba, and that the beans and

---

1. The three stockholders of appellant, P & E Shipping Corporation, are American citizens, but this fact does not appear to have been known to the Cuban authorities. The Ruth Ann was mortgaged for $90,000 in favor of the Chase Manhattan Bank.

potatoes were purchased by the food section of the importing division of that banking firm. In addition, we learn from two of appellee's exhibits that in the payment process for the shipment of beans and potatoes, the account of Banco Nacional de Cuba, Havana, Cuba, in the Bank of Nova Scotia, Toronto, Ontario, and its New York agency, were respectively debited. We may take judicial notice of the fact that the Cuban government nationalized Cuban foreign trade on April 25, 1960, by the creation of a Bank of Foreign Commerce to be the sole importer and exporter of products for the national interest of Cuba.[2] On January 3, 1961, the President of the United States severed diplomatic relations between the government of the United States and the government of the Republic of Cuba, and the government of the Swiss Confederation has assumed diplomatic and consular representation of the United States in Cuba.[3] What is the status of the Republic of Cuba as a state and its right to sue in our courts during the period of cessation of diplomatic relations? If it is not permitted to sue, then it would seem that appellee should not have been permitted to bring the suit here in question, for it appears that appellee is an agent or instrumentality of the Cuban government. If the real party in interest is not permitted to sue, then suit on its behalf, whether disclosed or undisclosed on the record, should not be countenanced. But the status of the Republic of Cuba in our courts is a matter for the determination by the Executive branch of our government. National City Bank of New York v. Republic of China, 348 U.S. 356, 358, 75 S.Ct. 423, 99 L.Ed. 389 (1955).

■ The issue of appellee's right to sue was not raised by appellant in the

District Court. Therefore, the matter should be sent back to the District Court to give it the opportunity to ascertain from the Department of State, appellee's relationship with the Cuban government, the status of that government in our courts during the period of cessation of diplomatic relations, and whether the United States or a national thereof would be allowed to maintain an action, similar to the one before us, in the courts of Cuba. See National City Bank of New York v. Republic of China, supra, at pp. 363–364, 75 S.Ct. 423. If the report of the Department is unfavorable, then the District Court should dismiss the libel.

The decree will be vacated and the cause remanded for further action.

---

2. See Facts on File Yearbook, 1960, Vol. XX, p. 173.

Britannica's 1962 Book of the Year for events in 1961, sums up the Cuban government's extent of taking over private property this way: "In domestic affairs, the program of intervention and then outright confiscation had by the end of the year dealt a death blow to private enterprise in Cuba, except at the level of the small merchant."

3. See Public Notice 178, 26 Fed.Reg. 921 (1961).