**BANCO PARA EL COMERCIO EX-TERIOR de CUBA, Libelant,**

v.

**The STEAMSHIP RUTH ANN, her engines, tackle, apparel, equipment, etc., in rem, and**

against

**P & E Shipping Corporation, and all persons lawfully intervening for their interests in said steamship, etc., in personam, Respondents.**

No. 12-60.

United States District Court
D. Puerto Rico.

April 22, 1964.

---

5. N.Y.Code of Crim.Proc. § 425.

6. United States ex rel. Birch v. Fay, 190 F.Supp. 105 (S.D.N.Y.1961).

502

Hartzell, Fernández & Novas, San Juan, P. R., Rabinowitz & Boudin, New York City, for libelant.

Isaias Rodriguez Moreno, San Juan, P. R., Poles, Tublin & Patestides, New York City, for respondents.

RUIZ-NAZARIO, Chief Judge.

On April 4, 1961, this court held, in a memorandum opinion, that the in rem respondent, the "SS Ruth Ann", a Liberian vessel owned by the in personam respondent, P & E Shipping Corporation, had breached its duty to deliver certain prepaid cargo to the libelant, Banco Para El Comercio Exterior de Cuba, an instrumentality of the Government of Cuba. The facts are stated in said Memorandum and in the Findings of Fact filed herein on May 16, 1961.

The respondents appealed, and the Court of Appeals for the Circuit, in its opinion of September 5, 1962 (307 F.2d 415, 417–418) *sua sponte* raised the question of the standing of a Cuban government corporation to sue in the Courts of the United States, and vacated this Court's decree under review therein and remanded the cause to this court with the direction that it "ascertain from the Department of State, appellee's relationship with the Cuban government, the status of that government in our courts during the period of cessation of diplomatic relations, and whether the United States or a national thereof would be allowed to maintain an action, similar to the one before us, in the courts of Cuba. (Case cited) If the report of the Department is unfavorable, then the District Court should dismiss the libel."

Pursuant to the said opinion of the Court of Appeals, this court, on November 14, 1962, addressed the following letter to the State Department:

"November 14, 1962
· The Honorable The Secretary
of State
Washington 25, D. C.
Dear Mr. Secretary:

The case of Banco para el Comercio Exterior de Cuba vs. the Liberian vessel SS Ruth Ann and its respondent owner, the Liberian corporation P. & E. Shipping Corporation was filed in this Court on November 10, 1960. Trial therein was held on December 5 and 6, 1960 and a final decree in favor of libellant was rendered by this Court on May 16, 1961.

An appeal from said decree was taken by the respondent to the Court of Appeals for the First Circuit (sub-nom. P. & E. Shipping Corp. v. Banco para el Comercio Ext. de Cuba). Said appellate Court, in its decision of September 5, 1962 (307 F.2d 415) vacating this court's decree and remanding the case for further action here, ruled as follows:

'The issue of appellee's right to sue was not raised by appellant in the District Court. Therefore, the matter should be sent back to the District Court to give it the opportunity to ascertain from the Department of State, appellee's relationship with the Cuban government, the status of that government in our courts during the period of cessation of diplomatic relations, and whether the United States or a national thereof would be allowed to maintain an action, similar to the one before us, in the courts of Cuba. See National City Bank of New York v. Republic of China, supra, at pp. 363–364, 75 S.Ct. 423.' (H.N. 6, p. 418).

Mandate thereon was received in this Court on October 24, 1962.

Pursuant to the quoted direction I hereby formally request an expres-

sion of the views of your Department respecting the particulars listed in the above quoted portion of the decision of the Court of Appeals for the First Circuit.

Respectfully yours,
(s) CLEMENTE RUIZ-NAZARIO"

The following answer of December 6, 1962, was received by the Court:

"Address Official Communications to
THE SECRETARY OF STATE
Washington 25, D. C.

Seal of the State    DEPARTMENT
                          OF STATE
Department

Washington
December 6, 1962
Dear Judge Ruiz-Nazario:

This is in reply to your letter of November 14, 1962, concerning the case of *Banco para el Comercio Exterior de Cuba v. P. & E. Shipping Corporation*. Pursuant to the mandate of the Court of Appeals for the First Circuit in its decision of September 5, 1962 (307 F.2d 415), you request an expression of the views of this Department as to "appellee's (Banco's) relationship with the Cuban Government, the status of that government in our courts during the period of cessation of diplomatic relations, and whether the United States or a national thereof would be allowed to maintain an action, similar to the one before us, in the courts of Cuba".

With respect to the status of the Cuban Government in our courts during the period of cessation of diplomatic relations, it may be stated that on January 7, 1959, the Government of the United States recognized the Government under the presidency of Dr. Manuel Urrutia Lleo, as the provisional Government of the Republic of Cuba. Although, on January 3, 1961, the Government of the United States severed diplomatic and consular relations with the Government of Cuba, this action did not constitute a cessation of recognition by the United States of the Government of Cuba. The United States has recognized without interruption and continues to recognize as the Government of Cuba, the Government of which Fidel Castro is Premier.

With regard to the other questions raised by the Court of Appeals, it will be necessary that this Department make inquiry, through the Government of Switzerland, of the Government of Cuba. Upon receipt of the information, we will immediately inform you of the results of that inquiry.

Sincerely yours,
For the Secretary of State:
(signed) LEONARD C. MEEKER
Leonard C. Meeker
Acting Legal Advisor

The Honorable
Clemente Ruiz-Nazario
Chief Judge of the United
States District Court for the
District of Puerto Rico,
San Juan, Puerto Rico."

On April 22, 1963, the State Department wrote a letter to this Court in connection with the questions left unanswered in its letter of December 6, 1962, as follows:

"Address Official Communications to
THE SECRETARY OF STATE
Washington 25, D. C.

Seal of the State    DEPARTMENT
Department              OF STATE
                          Washington
                          April 22, 1963
Dear Judge Ruiz-Nazario:

This is with further reference to your letter of November 14, and our reply of December 6, 1962, concerning the case of *Banco para el Comercio Exterior de Cuba v. P. & E. Shipping Corporation*. The Department has now received a reply from the Embassy of Switzerland at Havana in response to this Department's inquiry as to Banco's relationship with the Cuban Government

and whether the United States or a national thereof would be allowed to maintain an action, similar to the one involved in the case cited, in the courts of Cuba.

It appears that under Law 891 of October 13, 1960, published in the Official Gazette of Cuba of the same day, all private banking concerns in Cuba were expropriated by the State, the functions peculiar to banks thereby becoming the exclusive function of the State through agencies established for that purpose. Law 930 of February 23, 1961, on the organization of the Banco Nacional stipulated its international and foreign trade functions and operations, vesting all powers relating to such operations exclusively in the said bank. Special provision 3 dissolved the government autonomous foreign trade credit agency known as the Banco para el Comercio Exterior de Cuba. Special provision 5 legally empowered the Banco Nacional to continue the affairs of the state banks and nationalized private banks; it is understood to replace the said incorporated institutions with respect to all their property and rights and all obligations concerned in their banking business. Accordingly, it appears that the Banco para el Comercio Exterior de Cuba has been dissolved and its functions assumed by the Banco Nacional, an entity of the Government of Cuba.

The Department is further informed that in Cuba, in cases of nonfulfillment of an obligation, the injured party may bring legal proceedings, no special provisions establishing differences by reason of nationality or citizenship being stated in the laws. It appears that due to the reticence of lawyers now practicing in Havana to give any information which could be considered prejudicial to the regime in power, it was not possible to obtain legal opinion from Cuban lawyers on whether a United States citizen would, in fact, be allowed to bring suit in a Cuban court.

If the Court's inquiry is made with a view to determining whether, in fact, there exists in Cuba effective judicial remedies for aggrieved United States nationals, it may be pertinent to note that, in connection with claims of United States nationals against Cuba, the Department of State no longer requires that the aggrieved United States national show, as a prerequisite to consideration of espousal of his claim by the United States, that he has exhausted local legal remedies in Cuba. This policy is based on the Department's conclusion that owing to the breakdown of the Cuban judiciary as an independent branch of the Government and its subservience to the political policies of the executive even if local legal remedies theoretically exist under Cuban law, recourse to them by an aggrieved United States national would be futile. If this question is pertinent to the case, it could presumably be resolved by the Court on the basis of evidence submitted to it.

Sincerely yours,
For the Secretary of State:
(signed)
RICHARD D. KEARNEY
Richard D. Kearney
Acting Legal Adviser

The Honorable
Clemente Ruiz-Nazario
Chief Judge of the United
States District Court for the
District of Puerto Rico,
San Juan, Puerto Rico." [1]

1. It is significant that the person who, on behalf of the Secretary of State, addressed the quoted letter of April 22, 1963 to this Court, apparently failed to examine the then existing files and records of the Department of State dealing with the subject matter of this Court's inquiry. If he had done so, he would have found the letter of October 18, 1961, addressed by Abram Chayes,

In view of the unsatisfactory nature[2] of such answer to the second question, a hearing was held by me on July 12, 1963, at which evidence was introduced by the libelant to show that American citizens had indeed been afforded access to Cuban Courts. Although respondents contend that most of the judgments favorable to United States citizens were reversed on appeal, no conclusions contrary to the exercise by these citizens of their right to sue in the Cuban Courts can be derived from the fact of such reversals.

However that may be, this court is precluded from dismissing the libel because in Banco Nacional de Cuba v. Sabbatino, 84 S.Ct. 923, the highest court of the land flatly held, that the Cuban bank, petitioner therein, was not barred from access to the federal courts. (See page 932 thereof). There is, of course, no reason why this court should enlarge upon the holding in the above case. All I can do is to rule, as I do hereby rule, that the libel in the case before me cannot and must not be dismissed. Determination of whether the libel should be dismissed was all I was directed to do by the mandate of the Court of Appeals, and I cannot take any further action except in connection with another purely ministerial matter now pending, that is, a motion that Empresa Cubana Exportadora E. Importadora de Alimentos, an instrumentality of the Cuban Government, be substituted as libelant in the place and stead of Banco Para El Comercio Exterior de Cuba. Said motion was supplemented with exhibits supporting the assignee's right to be substituted in the place of the original libelant herein. Notice thereof was given to all interested parties. It was brought up for consideration at the hearing held on

the *Legal Adviser to the State Department,* in answer to an inquiry regarding the position of the Department by Mr. John Laylin, attorney for the amici in the Sabbatino Case, infra, as well as the other letter, dated November 14, 1961 from *George Ball, Under Secretary for Economic Affairs,* responding to a similar inquiry by the same attorney, both of which are quoted in F.N. 19, page 936, of the Court's opinion in the Sabbatino case, as well as in H.N. 16 of the Court of Appeals' opinion in the same case, 307 F.2d 845, at page 858. In both letters the high officials of the Department of State who wrote them expressed that the position of the Department was one of no comment on matters pending before the Courts.

Indeed, when called upon to comment, as the State Department did in the Government's brief filed in the Supreme Court in the Sabbatino case, it agreed with the petitioner's position in the case which finally won the approval of the High Court in said case.

In Calderone v. Naviera Vacuba S/A, 325 F.2d 76, the Court of Appeals for the Second Circuit which had previously decided the Sabbatino case, very aptly stated the reason for not questioning the standing of Cuban corporations, even after nationalization, to sue and be sued in the courts of the United States and to pay due respect to the executive's silence in this respect. The Court at page 77 of 325 F.2d, stated as follows:

"Considerations of both international relations and judicial administration lead us to conclude that the onus is on the Department of State, or some other department of the Executive Branch, to bring to the attention of the courts its decision that permitting nationalized Cuban corporations to sue is contrary to the national interest. Since silence on the question may be highly desirable, it would not be wise for the courts unnecessarily to force the Government's hand."

2. The futility of a prior inquiry was pointed out at p. 932 of the Supreme Court's opinion in Banco Nacional de Cuba v. Sabbatino, infra, as follows:

"The precise status of the United States Government and its nationals before foreign courts is much more difficult to determine. To make such an investigation significant, a court would have to discover not only what is provided by the formal structure of the foreign judicial system, but also what the practical possibilities of fair treatment are. The courts, whose powers to further the national interest in foreign affairs are necessarily circumscribed as compared with those of the political branches, can best serve the rule of law by not excluding otherwise proper suitors because of deficiencies in their legal system."

July 12, 1963, and no objection thereto was made.

The motion is therefore granted, and it is ORDERED, that Empresa Cubana Exportadora E. Importadora de Alimentos be substituted in the place and stead of Banco Para El Comercio Exterior de Cuba as libelant herein.