Daniel Ramos RIOS, Plaintiff,

v.

**EMPRESAS LINEAS MARITIMAS AR-
GENTINAS, etc., Defendant and
Third-Party Plaintiff-Appellant,**

v.

**FRED IMBERT, INC., Third-Party
Defendant-Appellee.**

No. 76–1397.

United States Court of Appeals,
First Circuit.

Argued Feb. 6, 1978.

Decided May 15, 1978.

Harry Anduze Montano, Hato Rey, P. R., with whom Calderon, Rosa-Silva & Vargas, Hato Rey, P. R., was on brief for appellant.

Paul E. Calvesbert, Hato Rey, P. R., with whom Jose Antonio Fuste and Jimenez & Fuste, Hato Rey, P. R., were on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, BOWNES, Circuit Judge.

BOWNES, Circuit Judge.

This case comes to us on appeal from a jury verdict of $29,000 in favor of Daniel Ramos Rios, a longshoreman who was injured by carbon monoxide poisoning aboard the RIO BELEN, a ship owned by defendant-appellant Empresas Lineas Maritimas Argentinas, Etc. (Lineas hereafter). Ramos Rios sued under a theory of unseaworthiness and a separate claim of negligence. Lineas had asserted a third party claim against Fred Imbert, Inc., the stevedoring contractor which employed Ramos Rios, alleging breach of Imbert's warranty of workmanlike performance.

The jury, after a four day trial, found for Ramos Rios against Lineas. It also found in favor of Fred Imbert as against Lineas.[1] Lineas moved for a judgment n. o. v., Fed. R.Civ.P. 50(b), and alternatively for a new trial, Fed.R.Civ.P. 59. Both motions were denied. Lineas seeks to overturn the finding of no liability on the part of the third party defendant, Fred Imbert.

On April 22, 1969, Ramos Rios and other employees of Fred Imbert stevedoring company were unloading apples from the hold of the Argentine ship RIO BELEN. Testimony at trial indicated that the ship had entered the port of San Juan, Puerto Rico, the morning of April 22 with a planned departure later the same day. Third party defendant Fred Imbert alleges that this urgency was one of the causes of the accident which injured Ramos Rios. Fred Imbert's pier supervisor, Eugenio Castro, testified that the First Officer of the RIO BELEN requested that a gasoline powered fingerlift (forklift) be brought on board to help unload at about 4:00 or 5:00 P.M. Castro testified that he immediately objected to the First Officer, explaining that the dangers of carbon monoxide poisoning from using the fingerlift inside the hold were substantial. He testified that he asked for and received assurances from the First Officer concerning adequate ventilation inside the hold. The reason for positioning the fingerlift aboard was to speed the unloading of the apples so that the RIO BELEN could leave port before midnight. Castro testified that the First Officer was dissatisfied with the progress being made by use of a pallet and bridle which required the stevedoring crew to hand-carry the boxes of apples to the pallet.

The testimony by Castro and the bosun Lebron (also an employee of Fred Imbert) was that the Argentine crew had retained control over the unloading operations and had directed that the fingerlift be brought aboard. They further testified that members of the Argentine crew were inside the hold during the unloading. Testimony from other members of the stevedoring work force was to the effect that there was no member of the Argentine crew inside the hold (which was approximately 50 feet by 30 feet). There was contradictory evidence as to who had given the order to bring the fingerlift aboard; Castro and Lebron (not altogether consistently) testified that the order came from the Argentine First Officer and the longshoremen working the hold testified that the order came from the foreman, Ayala, an employee of Fred Imbert who had died in the interval between the time of the accident and the

---

1. Contrary to the judge's instructions, the jury first returned a verdict finding both the ship and the stevedore company jointly liable to plaintiff. The judge reinstructed the jury, telling them that they had to determine liability on the third party complaint. The jury then, after a brief deliberation, found for plaintiff as

time of trial nearly seven years later.[2] A sworn deposition from Ayala, given prior to the time a third party complaint had been lodged against Fred Imbert, stated that he had ordered the fingerlift to be brought into the hold. None of the men working the hold had been in a position to observe the deck, where, Castro testified, he had conversed with the First Officer concerning the fingerlift and its attendant dangers. Nor did any longshoreman give directly contradictory testimony concerning the control assertedly retained by the Argentine crew over the unloading operations. Lineas did not present any witnesses on its own behalf. Significantly, it did not call any member of the Argentine crew to testify.

■ At the time of the accident,[3] Lineas was under a nondelegable duty to provide longshoremen working on board a safe and seaworthy vessel.[4] This included a hold where workers could work safely. Under ordinary tort law, it was also under a duty not to negligently injure workers on the vessel by action or inaction on its part. Although the ship had an absolute duty to provide a seaworthy vessel, it had a right to recover on a third party complaint (even if it were found to be negligent) if it could be proved that, by breaching its warranty of workmanlike performance, the stevedore introduced the hazard which caused the injury or which rendered the vessel unseaworthy. But see n. 3 *supra*. However, this right of indemnification may be lost if the vessel retains the right to control the stevedoring operations and, by its acts, impedes the stevedore from discharging its duty to perform in a workmanlike manner. *Italia Soc. v. Ore. Stevedoring Co.*, 376 U.S. 315, 322–324, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); *Weyerhaeuser S. S. Co. v. Nacirema*, 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); *Ryan Co. v. Pan-Atlantic Corp.*, 350 U.S. 124, 130–133, 76 S.Ct. 232, 100 L.Ed. 133 (1956); *Conceicao v. New Jersey Export Mar. Carpenters, Inc.*, 508 F.2d 437, 443 (2d Cir. 1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975); *DeGioia v. United States Lines Co.*, 304 F.2d 421, 425–426 (2d Cir. 1962).

■ The standard an appellate court must apply when requested to review denial of a motion for judgment *non obstante veredicto* is whether there are facts and inferences reasonably drawn from those facts which lead to but one conclusion. Evidence must be viewed in the light most favorable to the nonmoving party. Using this standard, we find that the jury could have reasonably found either that the ship breached its duty to provide a seaworthy vessel for the injured worker or that the ship was negligent in permitting the fingerlift to be brought into a hold with two of the four hatches covered where ventilation was inadequate to prevent carbon monoxide asphyxiation. The jury could also have rea-

against the RIO BELEN and for stevedore Fred Imbert as against the RIO BELEN.

**2.** We note that, although both Lineas and Fred Imbert raised the statute of limitations and/or laches as affirmative defenses to the action, nothing in the record we have before us suggests how this issue was resolved. We assume, therefore, that the question is moot.

**3.** The Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.*, has been held in the past not to apply to Puerto Rico because of the Puerto Rican Workmen's Accident Compensation Act, 11 L.P.R.A. §§ 1 *et seq. Guerrido v. Alcoa Steamship Co.*, 234 F.2d 349, 356 (1st Cir. 1956); *Alcoa Steamship Company v. Perez Rodriguez*, 376 F.2d 35, 38 (1st Cir. 1967). We need not reach the question of the effect of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act in Puerto Rico, *see Carrillo*

*v. Sameit Westbulk*, 514 F.2d 1214, 1216–1217 n. 1 (1st Cir. 1975), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 445, 46 L.Ed.2d 385 (1976), since the injury on which the action is based occurred in 1969, before the effective date of the amendments. *Addison v. Bulk Food Carriers, Inc.*, 489 F.2d 1041 (1st Cir. 1974); *see Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457, 460 n. 1 (5th Cir. 1976).

**4.** The accident occurred in 1969; we are, therefore, not confronted with the question of the applicability of the 1972 amendment to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(a), which eliminates the "Sieracki" doctrine of absolute liability to injured workers. *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 90–95, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

sonably found, based on the testimony adduced at trial, that defendant Lineas was in a position best able to avert the dangers of carbon monoxide poisoning by finding that the Argentine crew retained ultimate control and supervision over the stevedoring operations and thus impeded or hindered Fred Imbert from performing in a workmanlike manner.

In reviewing a motion for judgment n. o. v., it is improper to weigh credibility or resolve conflicting testimony. The motion is properly granted only when, as a matter of law, no conclusion but one can be drawn. We cannot say on the record before us that defendant Lineas has successfully shouldered its burden in showing that the motion was improperly denied. *See generally Brady v. Southern Ry. Co.*, 320 U.S. 476, 479, 64 S.Ct. 232, 88 L.Ed. 239 (1943); *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976), cert. denied, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977); *Gillham v. Admiral Corporation*, 523 F.2d 102, 109 (6th Cir. 1974), cert. denied, 424 U.S. 913, 96 S.Ct. 1113, 47 L.Ed.2d 318 (1976). *Cf. Service Auto Supply Co. of P.R. v. Harte & Co.*, 533 F.2d 23, 25 (1st Cir. 1976).

A motion for a new trial is addressed to the sound discretion of the trial court and will be reversed only for abuse of that discretion. Lineas urges two grounds for a new trial, first that inconsistent verdicts were returned by the jury, and, second, that there was insufficient evidence for the jury to find Lineas rather than Fred Imbert liable.

To support its contention of inconsistent verdicts, Lineas points to the return by the jury of a verdict which held both Lineas and Fred Imbert liable to plaintiff and divided liability equally between them and to the second verdict which found Lineas solely liable. When the jury returned the first verdict, which was directly contrary to instructions given by the court, the trial court properly instructed the jury that it had to decide as between Lineas and Fred Imbert on the third party complaint.

Resubmitting the case to the jury with renewed instructions has been held proper where the jury has failed to follow the court's instructions in returning a verdict. *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 547 (5th Cir. 1974); *Alston v. West*, 340 F.2d 856, 858 (7th Cir. 1965). *Cf.* Fed.R.Civ.P. 49(b) for analogous procedure when a jury returns inconsistent answers to interrogatories. We find this so especially where, as here, the parties did not contest the issue of resubmitting the verdict to the jury, nor did either party object to the form or content of the second set of instructions. See Fed. R.Civ.P. 51. Since the trial court refused to accept the first verdict, there were not two verdicts here. Nor can Lineas correctly assert that the jury did not, in fact, find Fred Imbert free of liability. After the jury returned with the second verdict, the court orally polled each member of the jury inquiring whether each found against the ship owner on its claim for indemnification from Fred Imbert. Each juror responded affirmatively.

Lineas asserts that the return of a verdict against it on the indemnity claim was not warranted by the evidence. A trial court, in assessing whether to grant a new trial for lack of legally sufficient evidence, does not properly do so merely because it might have come to a result different from that reached by the jury. The district court should order a new trial only when convinced that a miscarriage of justice would otherwise obtain. Where credibility of witnesses is at issue, special care should be taken not to invade the province peculiarly pertaining to the jury. *Tennant v. Peoria & Pekin Union Ry.*, 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944); *Litherland v. Petrolane Offshore Const. Services*, 546 F.2d 129, 134 (5th Cir. 1977), rehearing denied; *University Computing Co. v. Lykes-Youngstown Corp., supra*, 504 F.2d at 531; *Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc.*, 466 F.2d 179, 186–187 (8th Cir. 1972), cert. denied, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973). We cannot say that the verdict returned by the jury, denying Lineas indemnification from Fred Imbert,

was clearly against the weight of the evidence.[5] While it is true that there was inconsistent testimony concerning the role played by the Argentine crew in the unloading operations, the credibility to be given the witnesses' testimony was properly for the jury. The trial judge, who was in a far better position than we to assess credibility and conflicting testimony, felt that a new trial was not warranted.

*We affirm.*

---

**5.** We note that the standard has been variously stated as requiring that the verdict be against the "clear weight" or the "overwhelming weight" or the "great weight" of the evidence.

*See generally* 6A Moore's Federal Practice ⁋ 59.08[5] at 59–152 through 59–165 (2d ed. 1974).