**HAMBURG–AMERIKA LINIE,**
**Plaintiff-Appellant,**

v.

**GULF PUERTO RICO LINES, INC.,**
**Defendant-Appellee.**

No. 77–1184.

United States Court of Appeals,
First Circuit.

Argued April 3, 1978.

Decided July 21, 1978.

---

Jorge Bermudez Torregrosa, Hato Rey, P. R., with whom Hartzell, Ydrach, Mellado, Santiago, Perez & Novas, Hato Rey, P. R., was on brief, for plaintiff-appellant.

Jose Antonio Fuste, Hato Rey, P. R., with whom Jimenez & Fuste, Hato Rey, P. R., was on brief, for defendant-appellee.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This action is an appeal from a decision denying shipowner Hamburg-Amerika Linie (Hamburg) indemnity from stevedore Gulf Puerto Rico Lines, Inc. (Gulf) for an award of $9,106, plus interest, to injured longshoreman Francisco Vazquez Torres, an employee of Gulf.

Vazquez was injured September 29, 1968, while employed by Gulf as a longshoreman-motorman. Bundles of tin plates were being unloaded from the hold of a ship owned by Hamburg. Each bundle was tied with straps and two pieces of wood known as "sleepers" were attached on the bottom. The purpose of the sleepers was to allow enough space between the bottom of the bundle and the surface on which it was placed so that a forklift could be inserted under the bundle for moving it. The bundle which injured Vazquez came up from the hold in an inverted position, with the sleepers on top. It was lowered to the pier onto the cart operated by Vazquez and then driven to the warehouse, about 75 to 100 feet from the ship. Vazquez gave deposition testimony[1] that the bundle could have been righted by the sling which lowered it from the ship prior to placing it on the cart. He said it was not done because the apron men, i. e., longshoremen working on the pier, were rushed and did not have the time. He also testified that, when the forklift operator in the warehouse was unable to insert the fork between the bundle and the cart floor far enough to get leverage to lift it, Vazquez got out of the tractor portion of the cart and went back to slide a piece of wood under the cargo bundle. The tractor then moved, causing the bundle to slip and injure Vazquez on the left hand. Vazquez sued the shipowner, Hamburg, for negligence and unseaworthiness in July, 1969, and recovered $9,106, plus interest. In September, 1974, Hamburg filed the present action for indemnity against the stevedore, Gulf. In an amended complaint, jurisdiction was pleaded under 28 U.S.C. § 1333, the statute providing for admiralty jurisdiction, for which no amount in controversy need be pleaded. The district court, following a trial without a jury, found in favor of

the defendant stevedore. This appeal followed.

We are confronted at the outset with jurisdictional and choice of law questions. As aptly noted by Mr. Justice Holmes, "[t]he precise scope of admiralty jurisdiction is not a matter of obvious principle or of very accurate history." *The Blackheath*, 195 U.S. 361, 365, 25 S.Ct. 46, 47, 49 L.Ed. 236 (1904). His wry observation is small consolation to those who attempt to navigate through the reefs and breakers of maritime jurisdiction.

The original action by the injured longshoreman was brought in the federal district court in Puerto Rico under the diversity statute, 28 U.S.C. § 1332, on claims of negligence and unseaworthiness and tried without a jury. The injured worker recovered under seaworthiness. It is important to note that this judgment is not on appeal here; we, therefore, have no occasion to determine the correctness of any of the court's rulings therein. For purposes of clarification, however, we do state that, since the accident occurred in 1968, the *Longshoremen's and Harbor Workers' Compensation Act*, 33 U.S.C. §§ 901 *et seq.*, was not applicable.[2] We also observe, to clarify the discussion which follows, that a district court should properly apply federal maritime law once it has determined that the tort is a maritime one even when diversity jurisdiction is invoked. *Victory Carrier, Inc. v. Law*, 404 U.S. 202, 204, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409–411, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

The suit at bar, the claim for indemnity from the stevedoring company by the shipowner, rests not in tort, but in contract on the theory of breach of the

---

1. Taken in April, 1976, and introduced by agreement.

2. Because of the Puerto Rican Workmen's Accident Compensation Act, 11 L.P.R.A. §§ 1 *et seq.*, the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.*, has been held not to apply to Puerto Rico. We again need not and do not reach the question of the effect of the 1972 amendments to the

LHWCA in Puerto Rico. *Ramos Rios v. Empresas Lineas Maritimas Argentinas v. Fred Imbert, Inc.*, 575 F.2d 986 at 989 nn. 3 & 4 (1st Cir. 1978). *See also Guerrido v. Alcoa Steamship Co.*, 234 F.2d 349, 356 (1st Cir. 1956); *Alcoa Steamship Co. v. Perez Rodriguez*, 376 F.2d 35, 38 (1st Cir. 1967); *Carrillo v. Sameit Westbulk*, 514 F.2d 1214, 1216–1217 n. 1 (1st Cir. 1975).

contractor's warranty of workmanlike performance in unloading the ship's cargo. *Ryan Co. v. Pan-Atlantic Corp.*, 350 U.S. 124, 133–134, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Whether a particular contract is within the maritime jurisdiction of the United States "depends upon the nature and character of the contract[.]" *Phila., Wil., and Balt. R. Co. v. Phil. and Havre de Grace Steam Towboat Co.*, 64 U.S. (23 How.) 209, 215, 16 L.Ed. 433 (1859). Aspects of stevedoring may partake sufficiently of a maritime character so that the contract should be adjudged a maritime one. *See Atlantic Transport Co. v. Imbrovek*, 234 U.S. 52, 61–62, 34 S.Ct. 733, 58 L.Ed. 1208 (1914); *A. & G. Stevedores v. Ellerman Lines*, 369 U.S. 355, 359, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962). In the case at bar, the contract was sufficiently maritime in nature so that admiralty jurisdiction attached. We do not hold that every act by a stevedore necessarily implies admiralty jurisdiction, but merely that, in a case such as this, where the claim is bottomed on indemnity for damages paid in an unseaworthiness action to a longshoreman hurt in the process of unloading cargo purportedly faultily stowed, the stevedoring contract, with its implied warranty of workmanlike performance, is of maritime nature and character.

Because of the unique procedures followed in actions such as this (arising prior to the 1972 amendments to the LHWCA), it is not clear to us why Hamburg did not implead Gulf as a third party defendant in the underlying action. Pursuant to *Seas Shipping Co., Inc. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1948), an injured longshoreman was able to circumvent the limited redress available under either the Longshoremen's and Harbor Workers' Compensation Act or, in Puerto Rico, the Workmen's Accident Compensation Act, which limited actions directly against one's employer, by suing the shipowner on a theory of unseaworthiness, a doctrine predicating liability without proof of negligence on the part of the shipowner. *See, e. g., Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498–499, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971).

Recognizing the inequity this doctrine posed for shipowners, the Supreme Court allowed the shipowner to seek indemnity by suing the stevedoring contractor for breach of its contract to perform in a workmanlike manner. *Ryan Co. v. Pan-Atlantic Corp., supra*, 350 U.S. at 129–132, 76 S.Ct. 232. This "round robin," whereby the longshoreman recovered for unseaworthiness, irrespective of his ability to prove negligence by the shipowner, who, in turn, could sue the contractor for its failure to fulfill its warranty of workmanlike service, neatly sidestepped the bar to suits against employers raised by the LHWCA and the Puerto Rico Workmen's Accident Compensation Act. *See Munoz v. Flota Merchante Grancolombiana, S.A.*, 553 F.2d 837, 839–840 (2d Cir. 1977); *Murphy v. Woods Hole, Martha's Vineyard*, 545 F.2d 235, 238–39 (1st Cir. 1976). Although typically the indemnity action was pursued in the same suit by way of impleader, the same principles obtain in the instant case where the shipowner is bringing its claim for indemnification in a separate action.

The district court analyzed the original action by the longshoreman and concluded that it came within the rule enunciated in *Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), as an exception to the so-called "locality" rule which governs the determination of whether a tort lies within admiralty jurisdiction. *See e. g., N. J. Steam Navigation Co. v. Merchants' Bank*, 47 U.S. (6 How.) 344, 394, 12 L.Ed. 465 (1848) ("The locality of the tort is the *locus* of jurisdiction.") In *Gutierrez*, the Court found that the tort was properly within the maritime jurisdiction because the lack of care or unseaworthiness of the shipowner, *viz.*, in permitting coffee beans to be unloaded in defective bags, which led to spillage of the beans both on deck and on the pier below, where a longshoreman slipped and was injured, emanated from the ship though its effects were felt on the pier. The Court analogized its ruling to the liability of a warehouseman who injures a pedestrian on the sidewalk below by dropping a barrel out of his loft. The district court

here reasoned that the injury to the longshoreman occurred as a result of improper stowage, i. e., with the sleepers in an inverted position, and was thus attributable to an unseaworthy condition aboard the ship.[3] *See also* Extension of Admiralty Jurisdiction Act, 46 U.S.C. § 740. The court then found, as an "unavoidable corollary" to its finding of admiralty jurisdiction, that the stevedoring contractor could not be found responsible for the injury and denied the shipowner indemnity. This was error.

 The indemnity claim rests on the shipowner's allegation that the contractor breached its warranty to perform in a workmanlike manner.[4] The correct question, therefore, is not whether the contractor was responsible for the injury in a tort context, since it may be found liable in contract without proof of negligence, but whether the stevedore breached its contract to unload the ship in a workmanlike manner. *Italia Soc. v. Ore. Stevedoring Co.*, 376 U.S. 315, 323–324, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964). It must be emphasized that the duties owed by the shipowner to the longshoreman are not equivalent to those owed by the stevedore in the discharge of its warranty of workmanlike performance. *Weyerhaeuser S.S. Co. v. Nacirema*, 355 U.S. 563, 568, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). A finding that an unseaworthy condition aboard ship caused the longshoreman's injury in no way precludes the shipowner from successfully claiming over against the stevedore.

There was testimony that it would have been possible for the longshoremen to place strips of wood, which are usually lying on the pier, on the cart floor prior to lowering the bundle with inverted sleepers onto it. In this way, an improvised set of sleepers could have been provided by the longshoremen, thus eliminating the necessity for attempting to lift one corner of the flat bundle to insert the prong of the forklift, as was done in this case, resulting in the motorman's injury.

We reverse and remand for a determination of whether the stevedore, which contracted to perform unloading operations in an expert manner, breached its warranty of workmanlike performance by not refusing to unload the inverted bundle,[5] by failing to right it in the sling prior to placing it on the cart, by failing to improvise sleepers, or by attempting to unload the bundle from the cart in the manner performed.[6] The court should determine whether the shipowner or the stevedore was in a position best able to avert the danger of injury presented by the inverted sleepers. *Italia Societa, supra*, 376 U.S. at 323, 84 S.Ct. 748.

*Reversed and remanded.*

3. There was testimony that holds were frequently loaded with sleepers alternately inverted, so as to make maximum use of available space.

4. This warranty is one implied in law and, therefore, need have no evidence in writing. *Ryan Co. v. Pan-Atlantic Corp.*, 350 U.S. 124, 133–134, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

5. It is well established that a stevedore can refuse to unload defectively or dangerously packed cargo.

6. This inquiry is not predetermined because of the "Findings of Fact" entered by the court in the underlying action by the longshoreman against the shipowner, specifically, Finding No. 14:

"There is no way to remove that cargo from the cart without the risk of injury and, hence, an unseaworthy condition had been created aboard the vessel." Since the court, on remand, must examine whether the stevedore should have refused to unload the unseaworthy cargo or whether the cargo should have been placed on the cart without improvised sleepers, the court's analysis is in no way short-circuited by this finding of fact in the original action. Also, as noted in the text above, the duties owed by the shipowner to a longshoreman are not the same as those owed by the stevedore to the shipowner. A breach of the warranty of workmanlike performance by the stevedore requires an inquiry independent of that required by a breach by the shipowner to the longshoreman.