HAMBURG–AMERIKA LINIE, Plaintiff,

v.

GULF–PUERTO RICO LINES, INC., Defendant.

Civ. No. 74–1033.

United States District Court, D. Puerto Rico.

March 28, 1980.

Jorge Bermudez, Hartzell, Ydrach, Mellado Santiago & Perez, San Juan, Puerto Rico, for plaintiff.

Jose A. Fuste, Jimenez & Fuste, San Juan, Puerto Rico, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

WATSON, District Judge, Sitting by Designation.

On remand, the Court makes the following Findings of Fact:

1. This Court has admiralty and maritime jurisdiction under 28 U.S.C. § 1333 to entertain the present action. *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). The suit at bar, the claim for indemnity from the stevedoring contractor by the shipowner, rests in contract on the theory of breach of the contractor's warranty of workmanlike performance in unloading the ship's cargo. Whether a particular contract is within the maritime jurisdiction of the United States depends upon the nature and character of the contract. Aspects of stevedoring may partake sufficiently of a maritime character so that the contract should be adjudged a maritime one. In the case at bar, the contract was sufficiently maritime in nature. *Hamburg-Amerika Linie v. Gulf-Puerto Rico Lines*, 579 F.2d 115 (1st Cir. 1978).

2. Plaintiff shipowner is seeking to recover from the defendant stevedoring contractor the $9,106.00 judgment plaintiff paid to an injured longshoreman. Plaintiff claims its liability resulted from defendant's negligence and breach of its contractual obligation to perform its duties in a safe and workmanlike manner.

3. Francisco Vázquez Torres was an employee of Gulf-Puerto Rico Lines, Inc., defendant herein, working as a motorman on the pier at which the Motor Vessel SPEYER was being unloaded by defendant pursuant to contract. Bundles of tin plates were being unloaded on to carts pulled by Vázquez' tractor. The bundles were tied with straps to which two pieces of wood known as "sleepers" were attached on the bottom. A particular bundle was stowed upside down in the ship and was consequently unloaded on to the cart with the sleepers on its top side. The cart was pulled into the pier warehouse where a forklift operator placed the prongs of the lifter under the upside-down bundle to raise it while Mr. Vázquez placed pieces of wood underneath. The purpose of this activity was to eventually turn the bundle over so

that it would rest on its attached sleepers. In the course of placing the wood pieces, Mr. Vázquez was injured.

4. Vázquez gave testimony to the effect that when the forklift operator in the warehouse was unable to insert the fork between the bundle and the cart floor far enough to get leverage to lift it, Vázquez got out of the tractor portion of the cart and went back to slide a piece of wood under the cargo bundle. The tractor then moved, causing the bundle to slip and injure Vázquez on the left hand.

5. In relation to this September 29, 1968 accident, we find that the Motor Vessel SPEYER, belonging to Hamburg-Amerika Linie, was unseaworthy since the inception of the voyage, that is, from the port of loading, in that it contained an inverted bundle of tin plates which resulted in improperly positioned sleepers and which created an unseaworthy condition and a risk to unloading personnel belonging to the defendant at the port of San Juan, Puerto Rico.

6. We find from the testimony of plaintiff's expert witness, Mario Ramírez Lojo, that the holds of the ship in question were frequently loaded with cargo containing sleepers alternately inverted, so as to make maximum use of available space and that there existed a pattern of conduct whereby the shipowner inverted or criss-crossed the bundles. The evidence presented to the Court is devoid of any explanation as to this pattern of conduct and substantially points out to the fact that such method of loading the ship was made without regard to the stevedoring problems which could be caused in San Juan while unloading.

7. Plaintiff, Hamburg-Amerika Linie, in its Motion to the District Court, dated June 4, 1976, stated at the bottom of page 6, and we quote:

"Vázquez Torres was injured by an appurtenance of the vessel. The cargo and its container (sleepers and wires) were discharged from the bowels (sic) of the ship in an unseaworthy condition. All that occurred on land was proximately caused by that defective upside-down, un-

manageable cargo. Unlike *Law*, Vázquez was not injured by pier-based stevedore's equipment, but by defective cargo emanating from a vessel on navigable waters under the control of the crew."

From the above, it can be concluded as a matter of fact that the injury to Vázquez Torres was caused by the cargo in that it was discharged from the ship in an unseaworthy condition and that the accident occurred on land.

8. It is also an inevitable finding, by admission, that the defective cargo emanated from a vessel on navigable waters under the control of the crew.

9. From the evidence and from the testimony of plaintiff's expert witness, Mario Ramírez Lojo, we find that the method used in the attempt to turn the bundle over may not have been the simplest in that it would have been easier to place some wood on the cart before the upside-down bundle was ever placed on it. However, we concur with plaintiff's expert witness in that the chosen method cannot be labeled as unworkmanlike, unreasonable, unsafe or careless under the circumstances or that the failure to use the simplest method was a breach of the duty of workmanlike performance on the part of those involved.

10. As required by the United States Court of Appeals for the First Circuit in the Judgment on appeal entered July 21, 1978, we are bound to make a finding as to whether the stevedore breached its warranty of workmanlike performance by not refusing to unload the inverted bundle. An examination of the evidence shows that there was not a breach on the part of the stevedoring contractor by not refusing to unload the inverted bundle. There is testimony on the record to the effect that the longshoreman knew how to handle this situation. Plaintiff's expert witness, Mario Ramírez Lojo, admitted that many times and on many occasions he had observed that the bundles would come on board crisscrossed, one upside-down and right-up, in order to save space in the process of loading. This same expert witness, who was

not an eye witness to the occurrence, indicated that there were various ways to handle the situation. See our Finding Number 8 *ante*. It can be seen from the record that it would have been impractical for the stevedoring contractor to refuse unloading, since to unload the bundle which was in its normal position it was necessary also to unload the bundle which was in an inverted position. In relation to this specific finding, it is hereby stated that plaintiff had the burden of proof and that the record is devoid of evidence which could point out that a selective unloading could have been carried out by unloading only certain bundles and leaving the upside-down bundles in the hold.

11. As required by the United States Court of Appeals for the First Circuit in the Judgment on appeal entered July 21, 1978, we are bound to make a finding as to whether the stevedore breached its warranty of workmanlike performance by failing to right the bundle in the sling prior to placing it in the cart. After examining the evidence, we find that even though witness Francisco Vázquez Torres gave deposition testimony to the effect that the bundle could have been righted by the sling which lowered it from the ship prior to placing it on the cart, this alternative was discarded by plaintiff's own expert witness, Mario Ramírez Lojo, who in so doing contradicted witness Vázquez. In the process of fact-finding, we attribute great credibility in this respect to the testimony of plaintiff's expert. As stated above, we cannot say that the chosen method was unworkmanlike, unreasonable, unsafe or careless under the circumstances or that the failure to use the simplest method constituted a breach of workmanlike performance on the part of Gulf-Puerto Rico Lines, Inc.

12. As required by the United States Court of Appeals for the First Circuit in the Judgment on appeal entered July 21, 1978, we are bound to make a finding as to whether the stevedoring contractor breached its warranty of workmanlike performance by failing to improvise sleepers. Upon examining the evidence received at the time of trial, we find as a matter of fact that the stevedoring contractor did not breach its warranty of workmanlike performance by failing to improvise sleepers. The record brings and mentions the possibility of improvising sleepers through Mario Ramírez Lojo, plaintiff's expert witness. It should be noted that Mario Ramírez Lojo was not an eye witness and was not present when this accident occurred. The record is devoid of evidence which shows that there were pieces of wood of the appropriate size and at the time and place that could have been used to provide sleepers. Ramírez Lojo's testimony as to this matter was superficial and will not give way to a finding that such pieces of wood of the right dimensions were immediately available at the site where the Motor Vessel SPEYER was being unloaded. In addition, failure to improvise sleepers cannot give way to a finding that the stevedore breached its warranty of workmanlike performance. Ramírez Lojo himself testified that there were other acceptable methods to deal with inverted bundles. Once again, we conclude as a matter of fact that we cannot say, on the evidence presented by plaintiff that the method chosen was unworkmanlike, unreasonable, unsafe or careless under the circumstances, or that the failure to use the simplest method was a breach of Gulf-Puerto Rico Lines, Inc.'s warranty of workmanlike performance.

13. As required by the United States Court of Appeals for the First Circuit in the Judgment on appeal entered July 21, 1978, we are bound to make a finding as to whether the stevedoring contractor breached its warranty of workmanlike performance by attempting to unload the bundle from the cart in the manner performed. The answer to this question is in the negative. The unloading of the bundle on to the cart in the manner performed was an acceptable method of carrying out the operation. This was confirmed by plaintiff's expert, Mario Ramírez Lojo. So this District Court found in its original opinion and said finding was not altered by the Court of Appeals. Ramírez Lojo discarded turning the bundle on board because he considered it a potential risk for injury and gave four

alternate ways of doing it without placing any one of them over the other. The method used was indeed acceptable, cannot be considered unworkmanlike, unreasonable, unsafe or careless under the circumstances, and the defendant cannot be found as having breached its duty to operate in a workmanlike manner. At this point, it is important to reiterate our finding that when the forklift operator in the warehouse was unable to insert the fork between the bundle and the cart floor far enough to lift it, Vázquez got out of the tractor portion of the cart and went back to slide a piece of wood under the cargo bundle. The tractor moved, causing the bundle to slip and injure Vázquez on the left hand.

14. The accident described in the finding preceding this one is in no way attributable to the stevedoring contractor. We find as a matter of fact that the same is attributable to the unseaworthiness of the Motor Vessel SPEYER.

On the basis of the above Findings of Fact, the following Conclusions of Law are reached:

■ 1. The question which this Court has before it is not whether the contractor was responsible for the injuries in a tort context, but whether the stevedore breached its contract to unload the ship in a workmanlike manner. *Hamburg-Amerika Linie v. Gulf-Puerto Rico Lines, Inc.*, 579 F.2d 115 (1st Cir. 1978). The Court concludes as a matter of law that the loading of the Motor Vessel SPEYER with an inverted bundle created an unseaworthy condition which is imputable to the shipowner, plaintiff herein. *Weyerhaeuser S.S. Co. v. Nacirema*, 355 U.S. 563, 568, 78 S.Ct. 438, 441, 2 L.Ed.2d 491 (1958).

■ 2. The Court of Appeals in *Hamburg-Amerika Linie v. Gulf-Puerto Rico Lines, Inc.*, supra, citing the case of *Weyerhaeuser S.S. Co. v. Nacirema, supra*, has emphasized that the duties owed by the shipowner to the longshoreman are not equivalent to those owed by the stevedore in the discharge of its warranty of workmanlike performance and that a finding that an unseaworthy condition aboard a ship caused the longshoreman's injury in no way precludes the shipowner from successfully claiming over against the stevedore. This indemnity occurs if the circumstances so warrant. The recovery is not automatic and thus, not necessarily occurs in all cases. *Weyerhaeuser v. Nacirema, supra*, at p. 567, 78 S.Ct. at p. 440; *Ríos v. Empresas Líneas Marítimas Argentinas*, 575 F.2d 986 (1st Cir. 1978).

■ 3. The right to indemnification may be lost if the vessel retains the right to control the stevedoring operations and by its acts impedes the stevedore from discharging its duty to perform in a workmanlike manner. See *Ríos v. Empresas Líneas Marítimas Argentinas*, 575 F.2d 986, 989 (1st Cir. 1978) and cases cited therein.

4. On the basis of the facts as found, it is concluded as a matter of law that there is no evidence that the stevedoring contractor was in absolute control of the unloading operations in the Motor Vessel SPEYER. On the contrary, there is evidence on the basis of admission on the part of Hamburg-Amerika Linie, to the effect that the injury was caused by an unseaworthy condition and/or by defective cargo emanating from a vessel on navigable waters under the control of the crew. See Motion to the District Court dated June 4, 1976 at page 6, subscribed by the attorneys representing Hamburg-Amerika Linie.

5. The right to indemnification was lost in this case since the accident suffered by Vázquez was the result of an unseaworthy condition on board the ship, there being no evidence of *complete control* on the part of the stevedoring contractor of the unloading operations and no evidence by preponderance of a failure on the part of the stevedoring contractor to perform in a workmanlike manner. *Ríos v. Empresas Líneas Marímitas Argentinas*, 575 F.2d 986 (1st Cir. 1978).

6. It is concluded as a matter of law that the method used by the stevedoring contractor in coping with the situation created by the unloading of the inverted bundle which brought a condition of unsea-

worthiness on board the Motor Vessel SPEYER from the port of loading up to the discharge at San Juan, was not unworkmanlike, unreasonable, unsafe or careless under the circumstances. The failure to use a simpler method, on the evidence as brought by plaintiff and on the record as it now lies, cannot support a finding of breach on the part of the stevedoring contractor of his warranty of workmanlike performance.

7. It is concluded as a matter of law that plaintiff has failed to establish by a preponderance of the evidence that the defendant was negligent in any respect or that it breached its duty to perform in a workmanlike manner at any time. See the District Court's prior finding to this effect in the last paragraph of its opinion with findings of fact and conclusions of law entered in Civil 74–1033 on January 31, 1977.

WHEREFORE, Judgment is hereby entered for the defendant.

IT IS SO ORDERED.