**CHI SHUN HUA STEEL CO., LTD.**

v.

**CREST TANKERS, INC., et al.**

**No. C–87–451–L.**

United States District Court,
D. New Hampshire.

Feb. 28, 1989.

Bingham, Dana & Gould by Thomas H. Walsh, Jr. and James F. Ring, Boston, Mass., Sulloway, Hollis & Soden by John Burwell Garvey, Concord, N.H., for plaintiff.

Devine, Millimet, Stahl & Branch, P.A. by Daniel J. Callaghan, Manchester, N.H., Preti, Flaherty, Beliveau & Pachios by Michael Kaplan, Portland, Me., for defendants.

## ORDER ON MOTIONS TO DISMISS AND TO VACATE ATTACHMENT

LOUGHLIN, District Judge.

This is an admiralty case with an unusual background. The plaintiff is from the Republic of China and the defendant is a St. Louis corporation now in bankruptcy.

On November 23, 1987 this court granted an ex parte order issuing a warrant of seizure of defendant's vessel M/V Pomerol which was in Portsmouth, New Hampshire.

The basis of this action is the allegation by the plaintiff that it and the defendant had entered into a contract whereby the defendant had agreed to sell the plaintiff

its vessel S/T Beaujolais on August 17, 1987. Allegedly, the defendant had repudiated the contract and subsequently sold the Beaujolais to the United States Government. The defendant denies that a contract was ever extant between the parties and has filed a counterclaim for wrongful attachment against the plaintiff.

The vessel M/V Pomerol was seized in Portsmouth, New Hampshire and the parties stipulated that a bond in the amount of $800,000.00 would be deposited in this court which was done by Covenant Mutual Insurance Company and the vessel was then released.

The allegations preceding the issuance of a warrant of seizure are so bizarre that the court sets them forth. Although this court is overly circumspect in issuing ex parte attachments, the allegations of the plaintiff, with time being of the essence, led the court to issue the attachment.

Plaintiff alleges that it brought suit against the defendant in Federal Court in New Orleans. The United States Marshal attached the vessel M/V Pomerol. On November 14, 1987 the parties through their attorneys entered into an agreement whereby the plaintiff agreed to release its attachment of the vessel provided that the defendant did one of the two following alternatives: post security on the next business day, November 16, 1987, or bring the vessel the following day, November 17, 1987 to be reattached. The Pomerol left for the ocean and her next port of call was Portsmouth, New Hampshire.

Procedurally, this case had reached an impasse temporarily because the defendant had filed bankruptcy and further proceedings were held in abeyance by order of the Magistrate. Defendant filed a Chapter 11 Petition in Bankruptcy Court in the Eastern District of Missouri on December 24, 1987. By order dated August 4, 1988 the Missouri Bankruptcy Court allowed Crest Tankers, Inc. to employ and compensate law firms to defend them in this case. The defendant has filed a motion to vacate attachment and arrest pursuant to Admiralty Rules B and C and Fed.R.Civ.P. 64, and to release bond or in the alternative to reduce the amount of bond. The plaintiff seeks to dismiss the counterclaim for failing to state a claim upon which relief can be granted.

In Captain Jere M. White's affidavit, he stated that defendant was contractually obligated to deliver oil to Public Service Company of New Hampshire until July 31, 1988. He further states that because of this commitment the vessel M/V POMEROL left the New Orleans area in November, 1987 and further the defendant was always available for service of process within the State of New Hampshire.

The plaintiff naturally opposes the defendant's motion and seeks to dismiss the counterclaim. In the alternative, the plaintiff moves for summary judgment in accordance with Rule 12(b) if the court relies upon matters outside of the complaint.

With respect to the motion to dismiss the counterclaim, on December 14, 1987 defendant filed its answer and filed a counterclaim.

The gist of the counterclaim is that the attachment of M/V POMEROL under Admiralty Rules B and C was unjustified under the facts of this case and law germane to it. There is a general assertion that damages approximated $22,000.00 per day while the vessel was under attachment, $88,000 costs for the bond and consequential damages amounting to $50,000.

■ A motion to dismiss is one of limited inquiry. The standard for granting a motion to dismiss is not the likelihood of success on the merits, but whether the plaintiff is entitled to offer evidence to support his claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint should not be dismissed unless it appears that appellant could "prove no set of facts in support of his claim which would entitle him to relief." *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969).

■ The material facts alleged in the complaint are to be construed in the light most favorable to the non-moving party, and taken as admitted with dismissal ordered only if the non-moving party is not

entitled to relief under any set of facts they could prove. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969) *reh'g. denied* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Harper v. Cserr,* 544 F.2d 1121, 1122 (1st Cir. 1976). Upon review of a complaint before receipt of any evidence, the issue is not whether the non-moving party will ultimately prevail or is likely to prevail, but is whether the non-moving party is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ The court refuses to dismiss the counterclaim as evidence produced at the trial may show that the counterclaim may have merit. This ruling is not inconsistent with the court's further findings which will now be addressed concerning the attachment.

As heretofore stated, the defendants, Crest Tankers, Inc. and M/V POMEROL, request the court to vacate its orders of arrest and attachment issued pursuant to Admiralty Rules B and C and Federal Rule of Civil Procedure 64, and in so doing, to release the bond posted by defendants on November 25, 1987.

Alternatively, the defendants request the court to reduce the amount of the bond. In support of this motion, the defendants argue that the attachments and arrest were unjustified, unnecessary and unsupportable under applicable law.

■ "The boundaries of admiralty jurisdiction over contracts . . . have always been difficult to draw." *Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961). Admiralty jurisdiction extends only to wholly maritime contracts. *The Eclipse,* 135 U.S. 599, 10 S.Ct. 873, 34 L.Ed. 269 (1890); *Natasha, Inc. v. Evita Marine Charters, Inc.,* 763 F.2d 468 (1st Cir.1985). It is well established that contracts to sell a ship are not wholly maritime and that fact defeats maritime jurisdiction. *The Ada,* 250 F. 194 (2d Cir.1918); *see generally* G. Gilmore & C. Black, *The Law of Admiralty,* § 1–10, at

26 (2d ed. 1975). Where contracts contain provisions, some of which are maritime and some non-maritime, the question becomes whether the maritime obligations can be separately enforced without prejudice to the rest. *Eastern Massachusetts Street Railway Co. v. Transmarine Corp.,* 42 F.2d 58, 63–64 (1st Cir.1930); *Natasha, Inc.,* 763 F.2d at 470.

The defendants challenge the validity of the attachment under Rule B of the Supplemental Admiralty and Maritime Claims on two grounds. First, the defendants contend that in the absence of a maritime contract, no Rule B attachment will lie. Secondly, the defendants argue that Rule B attachment is precluded if the defendant can be found within the district in which the action is brought.

■ Under the Supplemental Admiralty and Maritime Claims, Rule B provides, in pertinent part:

> With respect to *any admiralty* or *maritime claim* in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees to be named in the process of the amount sued for, *if the defendant shall not be found within the district* . . .

Supplemental Admiralty and Maritime Claims Rule B, 28 U.S.C.A. (*emphasis added*). Admiralty jurisdiction of the federal courts embraces two principal subjects, maritime contracts and maritime torts. *Berwind–White Coal Mining Co. v. New York,* 135 F.2d 443 (2d Cir.1943).

■ In determining whether a contract is a "maritime contract," the court looks to the subject matter of the contract and the service to be rendered. *People's Ferry Co. v. Beers,* 61 U.S. (20 How.) 393, 15 L.Ed. 961 (1857); a maritime contract is one which concerns transportation by the sea, relates to navigable waters and concerns maritime employment. *Richard Bertram & Co. v. The Yacht, Wanda,* 447 F.2d 966, 967 (5th Cir.1971). The mere fact that a ship is involved will not bring the action

within the jurisdiction of an admiralty court.

■ The underlying agreement in this case allegedly involved the sale of the vessel S/T Beaujolais by the defendant Crest Tankers, Inc. to the plaintiff. This agreement was allegedly entered into on August 17, 1987. It is alleged the defendant repudiated this contract and the plaintiff sued in the federal district court in New Orleans. As a result of that suit, the M/V POMEROL was attached. Subsequent to this attachment, the parties entered into an agreement on November 14, 1987. This agreement called for the defendant to either post security on November 16, 1987 or bring the M/V POMEROL into port on November 17, 1987 to be reattached. The plaintiff in turn agreed to release its attachment provided one of the above conditions was met. The POMEROL never met the conditions and left for open waters. This court must determine whether the subject matter of the November 14, 1987 agreement makes the agreement a maritime contract.

The United States Supreme Court has not yet defined what makes a contract "maritime in nature." Contracts that courts have held to be within the admiralty jurisdiction of the federal district courts include: *P & E Shipping Corp. v. Banco Para el Comercio Exterior de Cuba*, 307 F.2d 415 (1st Cir.1962) (contracts for the carriage of goods); *Archawski v. Hanioti*, 350 U.S. 532, 76 S.Ct. 617, 100 L.Ed. 676 (1952) (contracts for the transportation of passengers); *Hamburg–Amerika Linie v. Gulf Puerto Rico Lines, Inc.*, 579 F.2d 115 (1st Cir.1978), *on remand*, 489 F.Supp. 68 (D.P.R.1980) (stevedoring contracts); *Pino v. Protection Maritime Ins. Co.*, 599 F.2d 10 (1st Cir.), *cert. denied*, 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979) (maritime insurance contract disputes). By way of contrast, contracts which the courts have held not to be within the admiralty jurisdiction of a federal court include: *Thames Towboat Co. v. The Francis McDonald*, 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920) (contacts for the construction of a vessel); *Natasha Inc. v. Evita Marine*

*Charters, Inc.*, 763 F.2d 468 (1st Cir.1985) (contracts for the sale of a vessel); *Joiner v. Diamond M. Drilling Co.*, 688 F.2d 256 (5th Cir.1982) (contracts to procure a crew); *Bogart v. The John Jay*, 58 U.S. (17 How.) 399, 15 L.Ed. 95 (1854) (action to foreclose a mortgage on a vessel, or to assert a right, title, or possession under it is not within the federal admiralty jurisdiction).

The November 14, 1987 agreement involved posting a bond or reattaching a vessel, and releasing a vessel. As stated previously, a maritime contract is an agreement which concerns transportation by sea, relates to navigation and concerns maritime employment. *Richard Bertram & Co.*, 477 F.2d at 967. The November 14, 1987 agreement does not concern the transportation, navigation or employment of the vessel. While the effects of the agreement may be felt on admiralty matters, the settlement agreement itself was of a non-maritime nature. The fact that a vessel is involved is not enough to bring the matter within the admiralty jurisdiction of the court. *Id.*

■ Even without a maritime contract, this court has admiralty jurisdiction if the plaintiff's claim for fraud arising out of the flight of the MV/POMEROL constitutes a maritime tort. "Determination of whether or not a tort is maritime ... traditionally depended upon the locality of the wrong." *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 253, 93 S.Ct. 493, 497, 34 L.Ed.2d 454 (1972). "If the wrong occurred on navigable waters, the action is within admiralty jurisdiction; if the wrong occurred on land, it is not." *Id.* "Navigable waters" is defined as a "waterway [which] in its natural and ordinary condition affords a channel for useful commerce." *U.S. v. Joseph G. Moretti, Inc.*, 478 F.2d 418, 428 (5th Cir.1973). The court established a "locality plus" rule which provides that locality should not be the sole basis on which to predicate admiralty jurisdiction. *Executive Jet*, 409 U.S. at 259, 93 S.Ct. at 500. Rather, the court held that "when a tort has no maritime locality, but does bear a relationship to maritime service, commerce or navigation then the tort is within

the admiralty jurisdiction of the court." *Id. Carroll v. Protection Maritime Insurance Co., Ltd.*, 512 F.2d 4 (1st Cir.1975) involved a dispute between fisherman and their marine insurers for interference with their employment contracts. In applying the *Executive Jet* test, the court upheld admiralty jurisdiction noting that a tort may be maritime if its effects are felt on navigable waters. *Id.*

The plaintiff's amended verified complaint, Count V, alleges fraud and deceit against Crest. More specifically, the plaintiff claims the defendants induced it into releasing the vessel through their misrepresentations and false assurances. The plaintiff further contends that the defendants intended all along to "make a run" for the open sea, and not honor the November 14, 1987 agreement. The plaintiff claims the tort in this case was the flight of the M/V POMEROL into the open seas. Thus, it is argued the injury to the plaintiff occurred on navigable waters when the POMEROL went out to sea. However, locality alone should not be the sole basis on which to predicate admiralty jurisdiction. *Executive Jet*, 409 U.S. at 253, 93 S.Ct. at 497. The court should also determine if the tort bears a relationship to maritime service, commerce or navigation. *Id.* at 259, 93 S.Ct. at 500. Captain Jere M. White stated in his affidavit that the defendant was contractually obligated to deliver oil in New Hampshire and this was the reason for the flight. The flight of the ship, however, following the alleged misrepresentations and fake assurances that permitted the release of the ship does not provide the tort a sufficient effect on navigable waters or a relationship to maritime service, commerce and navigation. Therefore, the plaintiff's claim does not amount to a maritime tort so as to invoke this court's admiralty jurisdiction.

Rule B of the Supplemental Admiralty and Maritime Claim Rules requires a plaintiff to state an "admiralty or maritime claim" in personam in a verified complaint in order for attachment to issue. However, the plaintiff's claims sounding in contract and tort are not maritime in nature. Therefore, the court need not address the second issue of whether the defendant, Crest, could be found within the district. Absent a maritime claim, no Rule B attachment can lie. Supplemental Admiralty and Maritime Claims, Rule B, 28 U.S.C.A.

Next, the defendants contend that arrest of the M/V POMEROL pursuant to Admiralty Rule C was inappropriate and should be vacated. More specifically, the defendants contend that under Rule C a maritime action *in rem* is a proceeding to execute a maritime lien. The defendants contend the November 14, 1987 agreement was not a maritime contract, thus any breach would not give rise to a maritime lien. In addition, the defendants contend that no lien will attach for breach of an executory contract. Lastly, the defendants argue the November 14, 1987 agreement did not provide a "necessary" to the ship so as to amount to a lien upon the vessel.

The plaintiff contends that the maritime lien rose from its claims of both breach of a maritime contract and maritime tort. As such, the plaintiff contends Rule C arrest of the M/V POMEROL was proper.

It is well established that a "maritime lien arises out of contract or tort." G. Gilmore & C. Black, *The Law of Admiralty*, 587 (2d ed. 1975) "To give rise to a maritime lien, the occurrence out of which the loss, injury or dispute arose must itself be maritime." 7A *Moore's Federal Practice* ¶ c.03. "A maritime action *in rem* has traditionally been available only in connection with a maritime lien." *Melwire Trading Co. v. M/V Cape Antibes*, 811 F.2d 1271, 1273 (9th Cir.1987).

Admiralty Rule C provides in pertinent part that "[a]n action *in rem* may be brought: (a) to enforce any maritime lien; (b) whenever a statute of the United States provides for a maritime action *in rem* or a proceeding analogous thereto." Supplemental Admiralty and Maritime Claim Rules, Rule C, 28 U.S.C.A. This court has already determined that the contract and tort claims in this case are not maritime in nature. Thus, those claims will not give rise to a "maritime lien" so as to invoke Rule C. Therefore, the court must deter-

**24**

mine whether a federal statute provides for this maritime action *in rem* so as to invoke Rule C of the admiralty Rules.

■ The Federal Maritime Lien Act, 46 U.S.C. §§ 971–975, provides in relevant part that any person who furnishes "repairs, supplies, towage, use of dry dock, or marine railway, or other necessaries, to any vessel ... shall have a maritime lien on a vessel, which may be enforced by suit in rem ..." 46 U.S.C. § 971. The plaintiffs contend that by agreeing to release the POMEROL, they provided "a necessary" to the vessel within the meaning of the statute. The term "other necessaries" is to be interpreted broadly to encourage services to be provided to keep ships active and consequently it applies whenever the goods or services that were provided to the vessel were necessary for its continued operation. *Farrell Ocean Services, Inc. v. United States*, 681 F.2d 91, 92–93 (1st Cir.1982); *Payne v. S.S. Tropic Breeze*, 423 F.2d 236, 241 (1st Cir.), *cert. denied*, 400 U.S. 964, 91 S.Ct. 363, 27 L.Ed.2d 383 (1970). In *Farrell*, four Navy vessels in need of repairs were transported via a barge from Virginia to Boston. The court found this was a "necessary" entitling the towing company to a maritime lien. *Farrell Ocean Services, Inc.*, 681 F.2d at 93. The court found that without the transportation of the vessels no repairs could be made and the operation would then be impaired. *Id.* In addition, the court held that the statute specifically allowed liens for "towage." 46 U.S.C. § 971.

Recently, the Fifth Circuit interpreted the term "necessary" and held that under the Federal Maritime Lien Act, 46 U.S.C. § 971, the term includes "most goods or services that are useful to the vessel, keep [it] out of danger, and enable [it] to perform [its] particular function." *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 603 (5th Cir.1986); *see also* 2 Benedict on Admiralty § 34 (7th Ed.1984) ("necessaries" are things a prudent owner would provide to a ship to perform its functions well). Necessaries may be money, labor, skill, personal services or materials. *Equilease Corp.*, 793 F.2d at 603. The court also held that

"[i]t is the present, *apparent want of the vessel, not the character of the thing supplied,* which makes it a necessary." *Id.* (*emphasis added*).

■ Given that this court is to interpret the term "necessaries" broadly, *Farrell*, 681 F.2d at 92–93, and the court is to be guided by the "want of the vessel, not the character of the thing supplied," *Equilease Corp.*, 793 F.2d at 603, this court determines that the plaintiff provided a "necessary" to the M/V POMEROL by agreeing to release the ship so as to be free to go about its business. Therefore, the plaintiffs were entitled to a maritime lien on the M/V POMEROL and properly proceeded under Rule C with their action *in rem*. 46 U.S.C. § 971; Supplemental Admiralty and Maritime Claims, Rule C, 28 U.S.C.A.

■ The third claim asserted by the defendants is that attachment under New Hampshire's prejudgment attachment statute, N.H.R.S.A. 511–A was inappropriate in this case and should be vacated. Specifically, the defendants contend that the plaintiff has not made a strong preliminary showing of success on the merits as required under R.S.A. 511–A:3. In response, the plaintiff claims to have amply supported its likelihood of success on all counts.

New Hampshire's pre-judgment attachment statute, R.S.A. 511–A, was invoked pursuant to the provisions under Fed.R. Civ.P. 64. On November 23, 1987 this court granted an ex parte order issuing a warrant of seizure of defendant's vessel M/V POMEROL which was in Portsmouth, New Hampshire. The United States Marshal served the Maritime arrest and attachment papers on November 24, 1987 on Captain Charles R. Lord. On November 25, 1987 the defendant, Crest Tankers, Inc. through its secretary, Robert W. Ziha, filed "claim" with this court submitting both Crest Tankers, Inc. and the M/V POMEROL to the court's jurisdiction. On November 27, 1987 the parties, through their attorneys, filed a stipulation pursuant to Rule E(5) of the Supplemental Rules for Certain Admiralty and Maritime Claims. This stipulation involved the defendant's

posting a bond for $800,000.00, deposited with this court and the vessel was then released. No further pleadings were filed until December 14, 1987, 20 days after the attachment issued. The defendant then filed for bankruptcy on December 24, 1987.

N.H. R.S.A. 511–A:8 provides in pertinent part:

> In all cases of attachment made ex parte the court may impose reasonable conditions thereon and *a hearing shall be granted as promptly as possible upon the subsequent request of a defendant.*

N.H. R.S.A. 511–A:8 (*emphasis added*); *Maine National Bank v. Baker,* 116 N.H. 185, 355 A.2d 429 (1976).

Once the defendant objects to the making of the attachments, the court must set a hearing within 14 days of the receipt of such objection. N.H. R.S.A. 511–A:3. The plaintiff in an attachment proceeding pursuant to R.S.A. 511–A:3 "must make a strong showing that he or she will ultimately prevail on the merits and obtain judgment in the requested amount...." *Diane Holly Corp. v. Bruno & Stillman Yacht Co.,* 559 F.Supp. 559, 561 (D.N.H. 1983). This showing must be established by proof greater than proof by a mere preponderance of the evidence. *Id.*

Both R.S.A. 511–A:8 and 511–A:3 acknowledge that the court is to schedule a hearing upon the request of the defendant or upon a defendant objecting to the attachments. In this case, the defendant never filed an objection with the court, nor did the defendant ever request a prompt post attachment hearing. Therefore, the burden on the plaintiff under R.S.A. 511–A:8 was to "establish probable cause to the satisfaction of the court of [its] basic right to recovery and the amount thereof...." R.S.A. 511–A:8. In addition, the plaintiff was required to prove, as it did, that there was a danger the property sought to be attached would be removed from the State. N.H.R.S.A. 511–A:8. The plaintiff met this burden and this court issued the attachment ex parte. Therefore, the attachment under New Hampshire's prejudgment attachment statute, R.S.A. 511–A is valid.

To summarize, the plaintiff's claims in contract and tort are not maritime in nature and therefore do not invoke the admiralty jurisdiction of this court. Therefore, Rule B attachment in this case was improper and must be vacated. However, the plaintiff did provide a "necessary" to the M/V POMEROL thereby establishing a maritime lien which may be enforced *in rem* under Rule C of the Supplementary Admiralty and Maritime Claim Rules. Additionally, the attachment under New Hampshire's prejudgment attachment statute, N.H.R.S.A. 511–A, is valid.

The defendants' motion to vacate attachment (Doc. # 19 is hereby denied. The plaintiff's motion to dismiss counterclaim (Doc. # 29) is also denied.