**STATE OF OREGON, Plaintiff,**

**v.**

**CITY OF RAJNEESHPURAM, a putative Oregon municipal corporation; Wasco County, a political subdivision of the State of Oregon; Robert M. Brown, Sheriff of Wasco County; Rajneesh Foundation International, a New Jersey corporation; Rajneesh Investment Corporation, an Oregon corporation; Rajneesh Neo-Sannyas International Commune, an Oregon corporation; Ma Anand Sheela, individually; Swami Prem Jayananda, Ma Yoga Vidya, Swami Krishna Deva, Ma Prem Archan, Swami Deva Sandesh, Ma Prem Patipada, Ma Deva Jayamala, Ma Sat Prabodhi, Ma Prem Rikta, individually and as representatives of the class of all current residents of the City of Rajneeshpuram, Defendants.**

**Civ. No. 84–359 FR.**

United States District Court, D. Oregon.

Oct. 12, 1984.

See also, D.C., 598 F.Supp. 1217.

Dave Frohnmayer, Atty. Gen., William F. Gary, Deputy Atty. Gen., John A. Reuling, Jr., Sp. Counsel, Robert W. Muir, Margaret Rabin, Asst. Attys. Gen., Salem, Or., for plaintiff.

Wilford K. Carey, Hood River, Or., for Wasco County.

Ma Prem Sangeet, Rajneesh Legal Services Corp., Swami Prem Niren, Swami Prartho Subhan, Rajneeshpuram, Or., Robert D. Durham, Portland, Or., for defendants.

## OPINION AND ORDER

FRYE, Judge:

Defendants[1] have moved the court to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

In ruling on a motion to dismiss for failure to state a claim, the court must assume the allegations of the complaint to be true and construe the allegations in favor of the plaintiff. In general, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41 at 45–46, 78 S.Ct. 99 at 102, 2 L.Ed.2d 80

---

**1.** All references to "defendants" in this Opinion exclude Wasco County and Sheriff Brown.

(1957). The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of plaintiff's complaint, assuming the facts as alleged. *See* 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.08 at 2265–67 (2d ed. 1984).

In its complaint, the State of Oregon seeks a declaratory judgment

1. Declaring that the State of Oregon is not required by state law to recognize the municipal status of the City of Rajneeshpuram because to do so would violate the religion clauses of the Oregon and United States Constitutions.

2. Declaring that the State of Oregon is not required to pay public monies or provide public services to the City of Rajneeshpuram ... because to do so would violate the religion clauses of the Oregon and United States Constitutions.

3. Declaring the Proclamation of Incorporation issued by Wasco County on May 26, 1982, is null and void....

4. Granting such other and further relief as the court may deem just and proper.

The basis for the State of Oregon's request for such a declaration is stated in paragraph A.4. of its complaint:

The unique and pervasive interrelationship of the City of Rajneeshpuram with corporate entities created for and dedicated to the advancement of a particular religion, *i.e.*, Rajneeshism, raises fundamental questions as to whether it would violate Article I, sections 2, 3, 4, and 5 of the Oregon Constitution and the Establishment Clause of the First Amendment to the United States Constitution, for the State of Oregon to recognize the City of Rajneeshpuram as a valid municipal corporation and to accord to it the various benefits and powers, including the payment of revenue sharing monies, as provided by state law.

The particular factual allegations supporting this assertion are as follows:

The City of Rajneeshpuram is a municipal corporation located in Wasco County, Oregon. The City was incorporated by a Proclamation of Incorporation on May 26, 1982, following a unanimous vote of 154 electors. Later a city council was elected, a city government organized, and a city charter enacted. The City is comprised of three separate parcels of land and a county road connecting the parcels. An additional parcel was later added by annexation, which is being challenged in other litigation. The City is located entirely within the confines of Rancho Rajneesh, a 64,229 acre parcel controlled by Rajneesh Foundation International (RFI). The only public thoroughfare and the only publicly owned property within Rancho Rajneesh and the City is a county road. RFI is a nonprofit religious corporation organized to advance the teachings of the Bhagwan Shree Rajneesh. The followers of the Bhagwan assert that he is an enlightened religious master. RFI is a part of the organizational structure through which the followers of the Bhagwan practice their religion. The Rajneesh Investment Corporation (RIC) is a for-profit Oregon corporation. RIC was capitalized in December, 1981, by a transfer of the Rancho Rajneesh real property from RFI to RIC in exchange for stock. All of the stock in RIC is owned by RFI. RIC is the sole owner of Rancho Rajneesh, including all of the real property within the City of Rajneeshpuram, except the county road. All of the officers and directors of RIC are followers of the Bhagwan. The Rajneesh Neo-Sannyas International Commune ("the Commune") is a corporation organized under Oregon's Co-operative Corporations Act and does not issue stock. The Commune was incorporated in December, 1981. The purpose of the Commune, according to its articles of incorporation, is "... to be a religious community where life is, in every respect, guided by the religious teachings of Bhagwan Shree Rajneesh and whose members live a communal life with a common treasury ...." The Commune is governed by a Board of Directors, of which the personal secretary to the Bhagwan, Ma Anand Sheela, is an *ex*

*officio* member. All members of the Commune are followers of the Bhagwan. Applications for membership in the Commune are considered by the Board of Directors, but no one may be admitted as a member without the approval of Ma Anand Sheela. The Commune holds a long-term leasehold on Rancho Rajneesh, including all of the real property within the City of Rajneeshpuram, except the county road. All of the City of Rajneeshpuram's real property and offices are subleased or otherwise made available to the City by the Commune. Ma Anand Sheela is the President of RFI. She is a member of the Board of Directors of RIC. She holds an unlimited general power of attorney from the Bhagwan Shree Rajneesh. She is married to Swami Prem Jayananda, who is the President and a member of the Board of Directors of RIC. He is "senior executive" of the Commune and has served as police commissioner for the City of Rajneeshpuram. Because of the interrelationship of the religious and for profit corporations that own and control all of the real property within the City of Rajneeshpuram, the sovereign power exercised by the City is subject to the actual, direct control of an organized religion and its leaders. RFI, a religious corporation, is the sole owner of RIC, which owns all real property in Rajneeshpuram. Ma Anand Sheela and her husband are a controlling majority of the Board of Directors of RIC. The Commune, lessee of all real property in Rajneeshpuram, is dedicated to creating and maintaining a religious community guided by the teachings of the Bhagwan. Ma Anand Sheela has actual control over admission to and expulsion from the Commune, and by virtue of the Commune's dedication to the Bhagwan and the Bhagwan's delegation of power to Ma Anand Sheela, has the power to exercise actual control over the affairs of the Commune. Because of the Commune's control over all real property in and around the City, no person may reside in Rajneeshpuram without the consent of the Commune and Ma Anand Sheela. All residents of Rajneeshpuram are either members or invitees of the Commune. The Commune possesses and has exercised substantial and direct control over visitor access to Rajneeshpuram. Only a small portion of Rajneeshpuram is accessible by the county road. Most of the City, including City Hall, is accessible only by means of roads controlled by the Commune. Visitors to the City are asked to check in at a visitor's center and have been required to obtain a visitor's pass as a condition to access to facilities (other than City Hall) not located directly on the county road right-of-way. Some visitors have been searched as a condition of entry to the City. By the terms of the leases, RFI has the option to lease back from the Commune and RIC any or all of the Rancho Rajneesh property for religious purposes. The followers of the Bhagwan assert that the development of Rajneeshpuram is the fulfillment of a religious vision. Work of every kind is considered a form of worship. Work stations are called "temples" and various City functions are designated as temples and supervised by the Commune. The primary purpose for establishing the City of Rajneeshpuram was to advance the religion of Rajneeshism. The City was founded to fulfil a religious vision. The City was designed and functions as a spiritual mecca for followers of the Bhagwan worldwide. It serves as a monument to and the residence of the Bhagwan, and as a gathering place for followers at institutions of religious training and at three annual religious festivals.

For purposes of the motion to dismiss, the court assumes that the above allegations are true.

### DISCUSSION AND ANALYSIS

■ The first amendment to the United States Constitution provides in part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." These prohibi-

tions are applicable to states as well as to Congress. *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947). The issue which this court will address is whether, assuming the allegations of the complaint are true, the Establishment Clause of the first amendment to the United States Constitution is violated by the operation and existence of the City of Rajneeshpuram as a sovereign municipal government, validated and supported by the State of Oregon as otherwise required by state law.

In *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), *rehearing denied* 404 U.S. 876, 92 S.Ct. 24, 30 L.Ed.2d 123 (1971), the Supreme Court laid down a three-part test for use in Establishment Clause cases. The Court explained the nature of the Establishment Clause and set out the test as follows:

The language of the Religion Clauses of the First Amendment is at best opaque, particularly when compared with other portions of the Amendment. Its authors did not simply prohibit the establishment of a state church or a state religion, an area history shows they regarded as very important and fraught with great dangers. Instead they commanded that there should be "no law *respecting* an establishment of religion." A law may be one "respecting" the forbidden objective while falling short of its total realization. A law "respecting" the proscribed result, that is, the establishment of religion, is not always easily identifiable as one violative of the Clause. A given law might not *establish* a state religion but nevertheless be one "respecting" that end in the sense of being a step that could lead to such establishment and hence offend the First Amendment.

In the absence of precisely stated constitutional prohibitions, we must draw lines with reference to the three main evils against which the Establishment Clause was intended to afford protection: "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Walz v. Tax Commis-*

*sion,* 397 U.S. 664, 668 [90 S.Ct. 1409, 1411, 25 L.Ed.2d 697] (1970).

Every analysis in this area must begin with consideration of the cumulative criteria developed by the Court over many years. Three such tests may be gleaned from our cases. First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, [citation omitted]; finally, the statute must not foster "an excessive government entanglement with religion." *Walz, supra,* at 674 [90 S.Ct. at 1414].

403 U.S. at 612–13, 91 S.Ct. at 2111 (emphasis in original).

Defendants' first argument in support of their motion to dismiss is that the State of Oregon cannot prevail because in the present case there is no governmental "act" to which the *Lemon* tests can be applied. Defendants contend that all of the allegations contained in the State's complaint involve merely private acts that, taken individually, are lawful and constitutionally protected, such as forming the defendant corporations and associating for the purpose of practicing a religion. Defendants contend that the only governmental acts alleged by plaintiff are the acts of City of Rajneeshpuram officials meeting with religious leaders to plan religious functions around the City. Defendants argue that these are not the types of acts with which the Establishment Clause deals, and are "a legitimate, neutral function of government" permitted under *Lemon.* The State of Oregon argues, however, that, taking all of the allegations of its complaint together, recognition of the municipal status of the City of Rajneeshpuram constitutes the establishment of a theocracy—that is, the granting of governmental power to a religion. The governmental acts forming the basis of the alleged Establishment Clause violation, the State of Oregon argues, are not those of the private defendants or restricted to those of the City of Rajneeshpuram itself. Rather, Wasco County's "act" in granting the City of Rajneeshpuram municipal status, and the State of Oregon's

"acts" in bestowing on the City of Rajneeshpuram the incidents of municipal status—that is, governmental powers—constitute an establishment of religion because they confer power on an entity subject to the actual and direct control of a religion and its leaders.

For the purpose of ruling upon this motion to dismiss, the court adopts the State of Oregon's characterization of its allegations. The court deems that the governmental acts alleged are those of the State of Oregon and Wasco County, through the operation of state law, in imparting sovereign municipal status to the City of Rajneeshpuram and the acts of the City of Rajneeshpuram itself in using those powers. The private defendants' individual corporate and religious activities are not the acts upon which the State's claim is based. However, allegations of the private defendants' individual, corporate, and religious activities are necessary allegations in support of the State of Oregon's claim that granting municipal power and status to the City of Rajneeshpuram gives sovereign governmental power to a religion and its leaders.

Defendants next argue in support of their motion to dismiss the State of Oregon's complaint that governments do not violate the Establishment Clause simply by doing acts that incidentally benefit religion, so long as the acts have a secular purpose and the non-secular benefit to religion is remote, indirect, and incidental. *See* L. Tribe, *American Constitutional Law* § 14–9 at 840 (1978). For example, defendants point out that (1) it is not unconstitutional for a government to give police, fire, or other public services to a church in the same manner as it provides such services to other citizens; (2) that the operation of an otherwise lawfully incorporated city does not violate the Establishment Clause simply because the population of the city is composed of members of one religious faith; and (3) that many cities in the United States were established by adherents of one particular religious faith, such as the German Benedictines of Mount Angel, Oregon.

Defendants' final argument is that the first amendment not only prohibits governmental establishment of religion, but also restricts governments from prohibiting the free exercise of religion and the right to free association. Defendants contend that if they are not allowed to incorporate and to operate the City of Rajneeshpuram, their own first amendment rights to practice religion and to associate freely will be violated.

The State of Oregon does not quarrel with these premises articulated by defendants, but rather argues that the particular *factual* situation alleged is so extreme as to permit a finding that the existence and operation of the City of Rajneeshpuram is unconstitutional. The State of Oregon's main argument is that it is unconstitutional to give municipal power and status to a city (1) in which all land is subject to the control of a religious corporation, (2) in which residency is controlled by a religious corporation and limited to followers of that religion or their guests, and (3) whose *raison d'etre* is the practice and advancement of a particular religion. Under such facts, the State of Oregon argues, giving the City of Rajneeshpuram municipal status and power is the same as giving municipal status and power to a religion, and that a clearer example of establishment of religion could not be imagined.

Defendants counter that the only alleged factual difference between a city composed entirely of adherents of one religion, such as the German Benedictines of Mount Angel, and the Rajneeshees of the City of Rajneeshpuram, is the form of land ownership and the concomitant restriction on residency in the city. Defendants argue that to find the existence and operation of the City of Rajneeshpuram unconstitutional would be to penalize defendants because they believe in communal rather than private ownership of land. As stated in defendants' memoranda in support of their motion to dismiss the State of Oregon's complaint:

According to the state's allegations, if 150 Rajneeshees or Catholics had lived at Rancho Rajneesh without a commune and without a single land owner, their petition for incorporation would have been acceptable. The state failed to give any reason why membership in the Commune or the nature of property ownership requires that the right to municipal incorporation be taken away. Defendant asserts that such a denial would be unconstitutional in its infringement upon each individual's right to vote, right to associate and right to own property. But the State of Oregon argues that denying municipal status to the City of Rajneeshpuram would not interfere with defendants' rights to practice religion, or to associate freely, or to have access to public services. If the City of Rajneeshpuram did not exist, the State of Oregon argues, defendants could still practice their religion and freely associate; the only difference would be that public services would be provided by Wasco County rather than by the City of Rajneeshpuram.

Undoubtedly there is an inherent tension between the Establishment Clause on the one hand, and the Free Exercise Clause on the other. A review of the cases indicates that there is no precise legal formulation for the court to follow in determining whether under the facts as alleged by the State of Oregon the existence and operation of the City of Rajneeshpuram is an unconstitutional establishment of religion, or whether on the other hand, not allowing the City of Rajneeshpuram to exist would violate defendants' rights to freely practice their religion. No federal case has addressed the precise situation present in this case.

The State relies heavily on *Larkin v. Grendel's Den*, 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982). There, the Supreme Court held unconstitutional a Massachusetts statute giving churches a discretionary power to veto liquor license applications of premises within five hundred feet of the church. The court held that the statute failed both the "primary effect"

and "excessive entanglement" tests of *Lemon:*

... We can assume that the churches would act in good faith in their exercise of the statutory power, yet [the statute] does not by its terms require that churches' power be used in a religiously neutral way. "[T]he potential for conflict inheres in the situation," and appellants have not suggested any "effective means of guaranteeing" that the delegated power "will be used exclusively for secular, neutral, and nonideological purposes." In addition, the mere appearance of a joint exercise of legislative authority by Church and State provides a significant symbolic benefit to religion in the minds of some by reason of the power conferred....

Turning to the third phase of the inquiry called for by *Lemon v. Kurtzman,* we see that we have not previously had occasion to consider the entanglement implications of a statute vesting significant governmental authority in churches. This statute enmeshes churches in the exercise of substantial governmental powers contrary to our consistent interpretation of the Establishment Clause; "[t]he objective is to prevent, as far as possible, the intrusion of either [Church or State] into the precincts of the other." *Lemon v. Kurtzman,* 403 U.S., at 614 [91 S.Ct. at 2112]. We went on in that case to state:

"Under our system the choice has been made that government is to be entirely excluded from the area of religious instruction *and churches excluded from the affairs of government.* The Constitution decrees that religion must be a private matter for the individual, the family, and the institutions of private choice, and that while some involvement and entanglement are inevitable, lines must be drawn." *Id.* at 625 [91 S.Ct. at 2117] (emphasis added).

459 U.S. at 125–26, 103 S.Ct. at 511–12 (citations, footnotes omitted). In the present case, assuming as true the facts alleged by the State of Oregon, the existence and operation of the City of Rajneesh-

puram impacts a number of the *Grendel's Den* concerns. The existence of the City of Rajneeshpuram gives the appearance of a joint exercise of legislative authority by church and state. Religious organizations control or own all real property within the City of Rajneeshpuram. The potential for religious-secular conflict with respect to actions of the City is inherent. Finally, the nature and extent of potential or actual control by religion over the government of the City raises serious entanglement problems.

The State of Oregon also relies on *State of New Jersey v. Celmer*, 80 N.J. 405, 404 A.2d 1 (1979). In the 19th century, a group of Methodist clergy established a camp meeting ground on 260 acres of land. This organization was incorporated in 1870 as "The Ocean Grove Camp Meeting Association of the Methodist Episcopal Church." The Association retained title to all real property within the camp grounds, but subdivided the area and leased lots to individuals "of good moral character and in sympathy with the objects of [the] Association." 404 A.2d at 3–4. The objects of the Association were to provide and maintain a meeting ground for members and friends of the Methodist Church. The bylaws of the Association established a governmental apparatus to manage the community's affairs, with power resting in the hands of a Board of Trustees, all of whom must be members in good standing of the Methodist Church. Since 1870, the New Jersey legislature had granted to the Board of Trustees "various police powers ordinarily only exercisable by municipalities." *Id.* 404 A.2d at 4. These included construction and maintenance of public improvements and the right to exercise police power within the community. Rules promulgated by the Board had the effect of municipal ordinances, and were enforced by a municipal court established by the Trustees. The New Jersey Supreme Court unanimously concluded that this scheme was a violation of the Establishment Clause. After discussing the leading cases, the court concluded:

> Regardless, however, of the precise phraseology that one utilizes to describe this First Amendment mandate, there can be no question but that at a minimum it precludes a state from ceding governmental powers to a religious organization. Yet ... our legislature has sought to do just that.

> • • • • •

> In effect, the Legislature has decreed that in Ocean Grove the Church shall be the State and the State shall be the Church. Individuals chosen by the followers of a particular faith to safeguard their spiritual and cultural way of life have been accorded authority to determine what shall constitute acceptable modes of conduct for Methodists and non-Methodists alike. Government and religion are so inextricably intertwined as to be inseparable from one another. Such a fusion of secular and ecclesiastical power ... violates both the letter and the spirit of the First Amendment....

*Id.* 404 A.2d at 6.

There are important factual differences between *Celmer* and the present case, which defendants have eloquently pointed out. The primary one is that in *Celmer* municipal power was given directly to a religious organization, whereas in this case municipal power is in the hands of a body elected according to state law. Given the alleged control of religious organizations and leaders over all property and all residents in Rajneeshpuram, this distinction may be more formal than substantive. Furthermore, both *Grendel's Den* and *Celmer* stand for the proposition that ceding actual legislative or municipal authority to a religious organization is unconstitutional.

 Defendants argue that the Free Exercise Clause of the first amendment requires that the existence and operation of the City of Rajneeshpuram be allowed to continue. Otherwise, defendants argue, they will be denied benefits flowing from the incorporation and operation of the City of Rajneeshpuram ordinarily available to them as citizens solely because of their religious beliefs—a result forbidden by the Free Exercise Clause. Defendants rely in

part on *Thomas v. Review Board of the Indiana Employment Security Division,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), and *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). As the Supreme Court has stated:

> Where the state conditions receipt of an important benefit ... or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.
>
> The mere fact that [an individual's] religious practice is burdened ... does not mean that an exemption accommodating his practice must be granted. The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest.

*Thomas,* 450 U.S. at 717–18, 101 S.Ct. at 1432.

## CONCLUSIONS AND RULING

■ If the facts alleged in the State of Oregon's complaint are true, the court concludes that the potential injury to the anti-establishment principle of the first amendment by the existence and the operation of the City of Rajneeshpuram clearly outweighs the potential harm to defendants' free exercise of religion rights. To deny defendants the right to operate a city is the only means of achieving a compelling state and federal interest—that of avoiding an establishment of religion. If the City of Rajneeshpuram were to cease to exist, defendants would not be precluded from practicing their religion nor from associating with whom they choose in order to do so. Defendants would not be denied access to public services. Public services would be provided by Wasco County. In short, although defendants' freedom to freely practice their religion would be burdened if the City of Rajneeshpuram were no longer recognized as a city, the burden upon them is small and indirect compared to the harm to

be done to the Establishment Clause by allowing the City of Rajneeshpuram to operate as a city.

Furthermore, if the facts alleged in the State of Oregon's complaint are true that (1) there is a close interrelationship between various defendant religious organizations; (2) these organizations control all of the real property within the City of Rajneeshpuram; and (3) these religious organizations control who may and may not reside within the City of Rajneeshpuram, then the court could conclude that the exercise of control over the City of Rajneeshpuram by these religious organizations is different enough from the control exercised by the religious leaders in a city of private landowners of one religion as to allow a constitutional distinction to be made between the two situations.

Similarly, there is a difference between the effect on and benefit to religion of the provision of ordinary municipal services to a city of private landowners of one religion and to the City of Rajneeshpuram, where the land is communally owned and controlled by religious organizations. The provision of services by a municipal government in a city whose residents are private landowners of one religious faith has the direct and primary effect of aiding the individual landowners and residents living in the city. The effect on the religion of those private landowners is remote, indirect, and incidental. In contrast, if, as alleged, all of the real property in the City of Rajneeshpuram is owned or controlled by religious organizations, the provision of municipal services by the City of Rajneeshpuram necessarily has the effect of aiding not only the individual residents of the City of Rajneeshpuram, but also of directly, obviously, and immediately benefitting the religious organizations themselves.

Given the facts as alleged by the State of Oregon, the court could conclude that the acts of the State of Oregon and Wasco County in recognizing the existence and operation of the City of Rajneeshpuram have as a principal and primary effect the

advancement of the religion of Rajneeshism. Finally, given the alleged power and control of religious organizations and leaders over all real property and residency within the City of Rajneeshpuram, the court could conclude that the existence and operation of the City of Rajneeshpuram would represent "an excessive government entanglement with religion." *Lemon, supra,* 403 U.S. at 613, 91 S.Ct. at 2111.

IT IS ORDERED that defendants' motion to dismiss is DENIED.