**ASG EMPLOYEES FEDERAL CREDIT UNION, Plaintiff**

**v.**

**BERNARD GURR, JR., Defendant**

High Court of American Samoa
Trial Division

CA No 8-94, CA No. 16-94, DCA No. 6-94

June 16, 1994

Before RICHMOND, Associate Justice, TAUANU`U, Chief Associate Judge, and AFUOLA, Associate Judge.

Counsel: For Plaintiff, Jill W. Crew
 For Defendant, Togiola T.A. Tulafono

Order Denying Motion to Dismiss Counterclaims:

These consolidated cases are presently before the court on the motions by plaintiff ASG Employees Federal Credit Union ("EFCU") to dismiss the counterclaims filed by defendant Bernard Gurr, Jr. ("Gurr"). We begin with a brief recitation of the facts, as they have been alleged by both parties.

EFCU is a federal credit union operating in American Samoa. In July 1991, Gurr signed a promissory note with EFCU for $20,261.63, with interest accruing at 14% per annum on the unpaid principal. Gurr also signed a security agreement to secure this debt, giving EFCU a security interest in Gurr's 1991 Ford Taurus stationwagon, serial number 1FACP57U5LG260572.

In August 1992, Gurr also signed a Fixed & Mortgage Note with EFCU for a loan of $130,544.28, with interest accruing at 10% per annum on the unpaid principal. In September 1992, Gurr then signed a Mortgage to secure the aforementioned loan. This latter Mortgage gave EFCU a security interest in Gurr's personal residence and land in Maloata, American Samoa, and the right to take and sell this property if Gurr defaulted on the loan.

Additionally, in May 1993, Gurr received a loan from EFCU for $1,565.90. Interest accrued on this promissory note at 18% per annum on the unpaid principal.

In January 1994, EFCU filed three complaints before this court, later consolidated into the present action, alleging that Gurr had in fact defaulted and seeking: (1) the principal and accrued interest due on the debts; (2) prejudgment interest to judgment; (3) post-judgment interest; (4) credit for foreclosure proceeds (or judicial foreclosure), as to the home,

land and vehicle; and (5) reasonable attorney's fees and costs.

In his answers, Gurr admitted to signing the notes and to his failure to make payments on the loans. He also does not dispute that the EFCU has a security interest in his land and residence, or in his vehicle, or that EFCU has the right to take and sell these properties. Gurr also concurs with EFCU as to the various amounts owing. In fact, Gurr's only divergence with the facts up to this point is his disagreement with EFCU's right to prejudgment interest and post-judgment interest and attorney's fees. However, Gurr has also forwarded a number of counterclaims, and it is these that are now before the court

These counterclaims state that although Gurr has not kept up his payments, he has been wrongfully prevented from doing so by EFCU. Gurr asserts that EFCU has wrongfully kept him from his job and has erroneously failed to issue paychecks to him. Additionally, Gurr states that after he was asked to vacate his office, checks in his possession were rejected by EFCU and this has also prevented him from meeting his obligations. In consequence of these actions Gurr asks this court to dismiss EFCU's complaints and award him damages in the amount of wages due, wrongfully rejected checks, injury to his reputation, and costs.

EFCU responded to these counterclaims with the motions to dismiss under T.C.R.C.P. Rules 12(b)(1) and 12(b)(6). These motions came regularly before the court on April 11, 1994. At the hearing, EFCU also argued that the inclusion of its supplemental affidavit converted the motions to dismiss to ones for summary judgment. It is this aspect of EFCU's argument that we first address.

T.C.R.C.P. Rule 12(b) is identical to its federal counterpart.[1] The relevant parts of T.C.R.C.P. Rule 12(b) read as follows:

> (b) ... the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, ... (6) failure to state a claim upon which relief can be granted.

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon

---

[1] Like its federal counterpart, T.C.R.C.P. Rule 12 makes no provision for converting a motion to dismiss under 12(b)(1) into a summary judgment motion.

which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in 56 TCRCP, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by 56 TCRCP.

■ Conversion of a 12(b)(6) motion into a motion for summary judgment lies squarely with the court. *Morris v. Gilbert*, 649 F. Supp. 1491, 1493 (E.D.N.Y. 1986) ("Whether or not the motion to dismiss has been converted to a motion for summary judgment is not a topic for debate. The court, and not the parties, decides whether the motion to dismiss is converted to one for summary judgment. The decision whether or not to convert the motion is within the court's discretion.")

■ In these cases, EFCU introduced, as part of its supplemental memorandum in support of its motion to dismiss Gurr's counterclaims, the supplemental affidavit by Robert McCartney, EFCU's conservatorship manager. This affidavit is clearly outside the pleadings. However, the Rule is clear--all parties "must be given reasonable opportunity to present all material made pertinent to such a motion".

Federal courts have generally been strict on compliance with this notice requirement. "In evaluating the adequacy of notice, this circuit has determined ... whether the party against whom summary judgment was entered was fairly appraised that the court would look beyond the pleadings and thereby transform the 12(b) motion to dismiss into one for summary judgment." *Cool Fuel, Inc. v. Connett*, 685 F.2d 309 (9th Cir. 1982). "Before summary judgment may be entered against a party, that party must be afforded both notice that the motion is pending and an adequate opportunity to respond." *Portland Retail, Etc. v. Kaiser Foundation, Etc.*, 662 F.2d 641, 645 (9th Cir. 1981). *See also Underwood v. Hunter*, 604 F.2d 367, 369 (5th Cir. 1979) (holding that in the 5th circuit, when converting a 12(b)(6) motion into one under Rule 56, adherence to notice and hearing requirements must be rigorous).

■ Adherence to notice requirements is necessary in order to present the opposing party with an adequate opportunity to put forward their best response. "If the conversion [from a Rule 12(b)(6) motion to one under Rule 56] occurs unexpectedly, the nonmoving party is left at the disadvantage of being unprepared to respond; hence notice is required." (citations omitted). *Portland Retail, Etc.* at 645.

In these cases, EFCU filed its motions to dismiss Gurr's counterclaims in the High Court on March 3, 1994. Included as part of these motions, in CA Nos 8-94 and 16-94, was Robert McCartney's initial affidavit. Gurr responded on Friday, April 8, 1994. EFCU also filed its supplemental memorandum, with a supplemental affidavit attached, on April 8, 1994—a Friday, just three days before the present hearing on the following Monday. It was only then that EFCU first sought conversion to a summary judgment motion.

Clearly, this supplemental submission does not comport with necessary, or even reasonable, notice requirements. *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir. 1979) (the court noted that when converting a 12(b)(6) motion to one for summary judgment, all parties had to be given a reasonable opportunity to present pertinent material; "reasonable opportunity" includes notice that the motion is now one for summary judgment). While Gurr was ready to defend against the motion to dismiss brought under 12(b)(6), he was neither prepared nor afforded fair opportunity to defend against one for summary judgment.

Because Gurr was given inadequate notice to respond to a summary judgment motion, we explicitly deny the conversion of this 12(b)(6) motion into a T.C.R.C.P. Rule 56 motion. This decision, lying within our discretion, also comports with the widespread view that summary judgment is not made automatic by filing matters outside the pleadings, but occurs only when a court "actually [takes] cognizance of them, or invoke(s) Rule 56." *Garita Hotel Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 19 (1st Cir. 1992).[2] Therefore, we will examine EFCU's motions to dismiss without consideration of matters beyond the pleadings.

We must next address EFCU's motions to dismiss under T.C.R.C.P. Rule 12(b)(1), alleging lack of jurisdiction over the subject matter. EFCU alleges that Gurr's counterclaims are directed against the National Credit Union Administration Board ("NCUA"), and based on actions taken by NCUA. While EFCU states that Gurr may bring suit against NCUA in federal district court, it alleges that EFCU is not the party properly subject to his counterclaim allegations and that his counterclaims should be dismissed on this basis. For the reasons detailed below, we deny the motion to dismiss under T.C.R.C.P. Rule 12(b)(1).

---

[2] Although we clearly feel that this is the best, and most substantiated, view, we acknowledge that some courts have decided the question in various ways. For a brief overview see *Gilbert v. City of Cambridge*, 932 F.2d 51, 60 (n.11) (1st Cir. 1991).

■ Once NCUA placed EFCU into conservatorship, in October 1993, NCUA then stood in the shoes of EFCU. *Rosciti Const. v. Lot 10 of E. Greenwich, Plat 14*, 754 F. Supp. 14, 17 (D.R.I. 1991) ("NCUA, as conservator, stands in the shoes of the mortgagee ..."). As EFCU itself states, NCUA, as conservator, "took possession and control of the business, assets, and records" (Memorandum in Support of Motion to Dismiss Counterclaim, March 3, 1993, p. 2). Gurr's counterclaims, naming EFCU, therefore directly implicate NCUA. NCUA can now file a motion to be substituted for EFCU as the real party in interest. NCUA may also, if it so desires, file a notice of removal to federal district court. The time limit for removal is 30 days, and this clock begins ticking when NCUA formally intervenes and becomes a party of record, a process that may be initiated by either party. *See Savoy v. White*, 753 F. Supp. 412 (D. Mass 1990); *Putnam v. DeRosa*, 963 F.2d 480, 483 (1st Cir. 1992). However, EFCU may not dismiss Gurr's claims on this basis, as NCUA is indeed a party to this action.

We turn next to EFCU's motions to dismiss under T.C.R.C.P. Rule 12(b)(6)--that Gurr's counterclaims fail to state a claim upon which relief can be granted. Insofar as EFCU's objection to the counterclaims rests on the premise that Gurr's counterclaims are directed at the wrong party, it is denied. As we stated when addressing the motion to dismiss under Rule 12(b)(1), NCUA now stands in the shoes of EFCU.

We address separately the two remaining contentions making up Gurr's counterclaims. Both the counterclaims and the motions to dismiss them are fatally unsupported and imprecise.

In his first contention, Gurr states that the termination of his employment by NCUA was wrongful, and that this was a proximate cause of his failure to make the required payments.
12 U.S.C.S. § 1787(c)(1) states, in pertinent part:

> In addition to any other rights ... the conservator ... for any insured credit union may disaffirm or repudiate any contract or lease--
>
> (A) to which such credit union is a party;
>
> (B) the performance of which the conservator ..., in the conservator's ... discretion, determines to be burdensome; and

> (C) the ... repudiation of which the conservator ...
> determines, in the conservator's ... discretion, will
> promote the orderly administration of the credit union's
> affairs.

Later provisions of 12 U.S.C.S. § 1787(c) mandate that this repudiation must be within a reasonable period following the conservator's appointment. Gurr has not alleged that his termination was untimely, choosing instead to challenge it on other grounds.

It is clear from this section that Gurr did not have an unqualified right to maintain his employment. Indeed, the law plainly states that NCUA, as EFCU's conservator, has a legal right to repudiate his type of contract. While Gurr has a right to challenge his termination under 12 U.S.C.S. § 1787(c)(3), the possible success of his challenge on those grounds does not provide an excuse for his failure to make required mortgage payments. Gurr's obligation to EFCU is not vacated even if he successfully challenges his termination of employment.

However, we are unable to glean from the pleadings what Gurr may assert when challenging his dismissal, or if he may have a valid claim. We are also unable to dismiss his counterclaims at the present time, as EFCU has forwarded nothing on which we can base such a ruling. Therefore, the motions to dismiss the counterclaims on this aspect of T.C.R.C.P. Rule 12(b)(6) are denied.[3]

We now turn to the second basis on which the counterclaims rest--that Gurr was prevented from making timely mortgage payments by EFCU's wrongful rejection of checks he had in his possession at the time he was terminated. Gurr states that these checks were for compensatory time-off that Gurr had not taken, past wages, and his EFCU shares. EFCU claims that there were five such checks and that they were for accrued compensatory time-off, accrued vacation time, accrued sick leave, and for FICA and American Samoa income tax withholdings. EFCU also states that Gurr was in default prior to these actions and therefore, even if these acts are wrongful, they have no bearing on Gurr's failures to make the

---

[11] Additionally, the conservator's liability for repudiating any contract pursuant to 12 U.S.C.S. § 1787(c)(1) is limited to actual direct compensatory damages as of (1) the date of the conservator's appointment or (2) the date of repudiation of the contract. Section (c)(3)(B) makes it clear that actual direct compensatory damages do not include punitive damages or damages for pain and suffering. Therefore, even assuming Gurr's counterclaims are upheld, his demand for damages related to injury to reputation would be baseless.

93

required payments. Specifically, EFCU states that Gurr had become delinquent, at least as to the notes secured by the vehicle, loan and home, by May 1993. Although EFCU catalogues payments on these notes made by Gurr between May and September 1993, it states in its memorandum in support of the motions to dismiss the counterclaims that these payments did not cure Gurr's delinquencies, and that he remained in default throughout this period. Nowhere does Gurr actually refute the assertion that these defaults had occurred prior to the alleged wrongful stop payments on the checks in question.

█ We note that "great specificity is ordinarily not required to survive a Rule 12(b)(6) motion." *Garita Hotel Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 17 (1st Cir. 1992). Moreover, we are again faced with the problem that neither Gurr nor EFCU has asserted enough facts, or any law, for us to rule with assurance on the matter one way or another. Therefore, the motion to dismiss the counterclaims on this aspect of T.C.R.C.P. Rule 12(b)(6) is also denied. *See Chi Shun Hua Steel Co., Ltd. v. Crest Tankers, Inc.*, 708 F. Supp. 18 (D.N.H. 1989); *State of Or. v. City of Rajneeshpuram*, 598 F. Supp. 1208 (D. Or. 1984); *Spell v. McDaniel*, 591 F. Supp. 1090 (E.D.N.Y. 1984); *Williams v. Gorton*, 529 F.2d 668 (9th Cir. 1976).

We last address EFCU's motions to dismiss under T.C.R.C.P. Rule 12(b). Here EFCU urges dismissal because Gurr has already asserted identical counterclaims against NCUA in CA No. 117-93, (NCUA v. Gurr, et. al.). In CA No. 117-93, NCUA applied for permanent injunctive relief against defendants named in that action. A default judgment granting permanent injunctive relief against all these defendants, except Gurr, was entered on January 10, 1994. On January 5, 1994, Gurr answered and counterclaimed, alleging that he was illegally removed from his position and that checks in his possession were wrongfully denied payment. Gurr also alleges injury to his reputation and requests damages and reinstatement.

It appears that the counterclaims advanced by Gurr are the same in both CA No. 117-93 and in the cases before us. Although the causes of action are not as identical, we are mindful of the possible waste of judicial time and resources that often springs from repetitive litigation. Both the suit in CA No. 117-93 and the ones before us are essentially based on the same transaction. Additionally, Gurr has forwarded identical counterclaims in all suits. Therefore, we now consolidate CA No. 117-93 with the cases before us, in order to more expeditiously resolve this matter. *See I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541 (11th Cir. 1986);

94

*Walton v. Eaton*, 563 F.2d 66 (3rd Cir. 1977).

In addition, this same underlying transaction is also the basis of another suit presently pending before this court, LT No. 13-94. In the interest of addressing this matter in full, we also now consolidate LT No. 13-94 with the cases before us, in order to resolve this matter properly.

In conclusion, we invite further documented and supported submissions that may enable the court to dispose of this matter, or portions of it, in a manner a more expeditious than trial.

It is so ordered.